**In re Nomination Paper of Ralph NADER and Peter Miguel Camejo as Candidates of an Independent Political Body for President and Vice President in the General Election of November 2, 2004.**

**Linda S. Serody, Roderick J. Sweets, Ronald Bergman, Richard Trinclisti, Terry Trinclisti, Bernie Cohen–Scott, Donald G. Brown and Julia A. O'Connell, Petitioners.**

Commonwealth Court of Pennsylvania.

Argued Aug. 27, 2004.

Decided Aug. 30, 2004.

Gregory M. Harvey, Philadelphia, for petitioners.

Samuel C. Stretton, West Chester, for respondents.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Linda S. Serody et al. (Objectors) have filed objections to the Nomination Papers of Ralph Nader and Peter Miguel Camejo (Candidates) as Candidates of an Independent Political Body for President and Vice President of the United States in the General Election scheduled for November 2, 2004. By order dated August 19, 2004, the Court directed Candidates to file an omnibus set of pre-trial evidentiary hearing objections and brief in support thereof.[1]

Argument on Candidates' objections and Objectors' reply thereto was held before the Court on August 27, 2004. Candidates' objections may be grouped into

---

1. The pre-hearing challenges relate to the objections filed to the nomination papers of Candidates. The Court notes that the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600–3591, distinguishes between candidates in party primary elections who must file "nomination petitions" and candidates of political bodies (independent of minor party candidates) who must file "nomination papers." For this election, the latter candidates must file nomination papers containing a number of signatures equal to 2% of the last highest vote obtained in a statewide election, which in this case equates to 25,697 signatures.

three categories: (1) alleged disqualification due to party affiliation or membership and related affidavits; (2) method of consideration of electors' signatures and addresses; and (3) validity and/or method of challenging or rehabilitating signatures or pages in the nominating papers that were rejected by the Secretary of the Commonwealth.

## I

■ Candidates seek to dismiss Objectors' challenge that Candidates are disqualified from appearing on the Pennsylvania ballot as candidates of an independent political body for President and Vice President because they have been nominated by the National Convention of the Reform Party of the United States for the same offices.[2] Objectors note that in Pennsylvania, candidates seeking to appear on the ballot as independents may not have sought nomination by a political party in the same election cycle. *See* Section 951(e) of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2911(e).[3] Objectors further argue that Candidate Camejo must be disqualified because he executed a false affidavit claiming that he was not an enrolled member of a political party although he was a registered member of the Green Party in Sacramento County, California.

Section 951(e) of the Election Code provides as follows:

**There shall be appended to each nomination paper offered for filing an affidavit of each candidate nominated therein, stating**—(1) the election district in which he resides; (2) the name of the office for which he consents to be a candidate; (3) that he is eligible for such office; (4) that he will not knowingly violate any provision of this act, or of any law regulating and limiting election expenses, and prohibiting corrupt practices in connection therewith; (5) that his name has not been presented as a candidate by nomination petitions for any public office to be voted for at the ensuing primary election, nor has he been nominated by any other nomination papers filed for any such office; (6) that in the case where he is a candidate for election at a general or municipal election, he was not a registered and enrolled member of a party thirty (30) days before the primary held prior to the general or municipal election in that same year....

Candidates dispute the contention that, because they accepted the nomination of the National Convention of the Reform Party of the United States, they have forfeited their right to seek election as independent candidates in Pennsylvania. They argue that a careful reading of Section 951(e) "seems to suggest" that its language refers

2. The Court's pre-trial order envisioned the filing of pre-trial evidentiary objections. The "party nomination or membership" issue is clearly a legal rather than an evidentiary issue. Nonetheless, because the issue could potentially decide the entire matter, thus obviating the need for perhaps unprecedented hearings, the Court shall determine this matter at the outset.

3. The applicable statutory provisions are sometimes referred to as the "sore loser" provisions, as they generally are intended to

prevent losers of party primaries from a "second chance" run as independents. *In re Zulick,* 832 A.2d 572 (Pa.Cmwlth.), *aff'd,* 575 Pa. 140, 834 A.2d 1126 (2003); *In re Substitute Nomination Certification of Moran,* 739 A.2d 1168 (Pa.Cmwlth.1999). *See also* Section 976(e) of the Election Code, 25 P.S. § 2936, which prohibits the filing of nomination papers if the candidate has filed a nomination petition for any public office for the ensuing primary or has been nominated for such office by nomination papers previously filed.

solely to candidates who run in Pennsylvania primaries and in Pennsylvania elections and that the statute does not refer to candidates' activities in another state such as Michigan. In addition, Candidates assert their First Amendment right of association and Fourteenth Amendment right to equal protection under the law to run in Pennsylvania as independent candidates regardless of their nomination as candidates of the Reform Party.

Arguing the holdings in *Patriot Party of Allegheny County v. Allegheny County Department of Elections (Patriot Party I)*, 95 F.3d 253 (3d Cir.1996), and *Reform Party of Allegheny County v. Allegheny County Department of Elections (Patriot Party II)*, 174 F.3d 305 (3d Cir.1999), Candidates urge this Court to adopt the analysis in those cases and to conclude that any statutory prohibition against Candidates' running in Pennsylvania because of the Reform Party nomination would violate their equal protection rights inasmuch as no strong state interest would be served by denying Candidates ballot status in Pennsylvania. In *Patriot Party II* an en banc panel of the Third Circuit Court of Appeals reaffirmed in part the panel decision in *Patriot Party I* that Section 951(e)(5) and Section 976(e) of the Election Code, 25 P.S. § 2936(e), constituted invidious discrimination in violation of minor political parties' equal protection rights under the Fourteenth Amendment. The Election Code provisions allowed major political parties to engage in cross filing of candidates in certain local elections for five offices but denied that same opportunity to minor political parties.

The court reiterated the principle that by treating minor and major political parties differently, the Election Code provisions burdened not only the minor parties but the voters who supported the parties as well, citing *Williams v. Rhodes*, 393

U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Recounting the state's proffered justifications for the cross-filing ban noted in *Patriot Party II*, Candidates contend that they do not meet the "sore losers" test because they did not run in the Pennsylvania primary; they do not seek to monopolize the ballot or cause voter confusion; their candidacy does not cause a "bleeding" of independent voters; and their candidacy will not discourage others from running as independents. Nonetheless, the present matter does not involve a ban on cross filing for the offices of President and Vice President, which in any event is not allowed under the Election Code, and consequently the holding in *Patriot Party II* is inapposite and irrelevant to the issue before this Court. Therefore, neither *Patriot Party I* nor *Patriot Party II* supports Candidates' arguments.

In contrast, in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997), the United States Supreme Court held that the election laws of the State of Minnesota, which prohibited an individual from appearing on the ballot as a candidate of more than one party, did not violate that individual's First Amendment or Fourteenth Amendment rights. The New Party, a minor political party, selected a candidate to run for an office who already had accepted nomination by another political party for the same office. The New Party sued the state's election officials claiming that the "anti-fusion" law violated its associational rights under the First and Fourteenth Amendments. Citing *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), among other cases, the Supreme Court recognized in *Timmons* that states may enact reasonable regulations of parties, elections and ballots to reduce election and campaign-related disorder and to prevent chaos. It upheld Minnesota's laws after weighing the character and magnitude of

the burdens imposed on associational rights, which were not severe, and concluding that the laws ruled out only those individuals who had already agreed to seek office as a candidate for another party.

In *Storer* the Supreme Court approved of a California election statute that denied ballot positions to independent candidates who voted in the immediately preceding primary election or who had a registered party affiliation at any time during the year before the same primary election. Furthermore, no individual was permitted to file nomination papers for a party nomination and an independent nomination for the same office or for more than one office in the same election. The court recognized that California's one-year "party-disaffiliation" statute was part of that state's policy to maintain the integrity of the ballot, and it further concluded that the statute did not discriminate against independent candidates. In so ruling, the court upheld the state's denial of ballot status to two men who sought election as independent candidates for Congress when they were affiliated with a qualified political party, as registered Democrats, within one year prior to the 1972 primary election.

This Court is persuaded that case authority exists to defeat the argument that Candidates' rights would be unduly burdened if the Court were to hold that Section 951(e) of the Election Code prohibits ballot status in Pennsylvania to the independent candidates for President and Vice President while they simultaneously run for the same offices as candidates in Michigan under the Reform Party nomination. Candidates have cited no authority for the proposition that the prohibition contained in Section 951(e) applies only to registered voters running for state office in Pennsylvania; nor have they presented compelling statutory construction arguments to convince the Court that the legislature intend-

ed one interpretation of Section 951(e) for Pennsylvania registered voters seeking office in this state and another interpretation for those persons registered in other states who seek ballot status in Pennsylvania. While fully adherent to the overriding and longstanding legislative policy of the Commonwealth to protect the elective franchise, *see In re Driscoll*, 577 Pa. 501, 847 A.2d 44 (2004), and while remaining respectful of the fundamental and precious right of the voters to chose among candidates, the Court is not free to ignore clear statutory language in the Election Code or case holdings that dictate the result reached in this case.

█ The Court observes, and wholeheartedly agrees with, the principle that states may not enact laws to totally insulate the Democratic and Republican two-party system from minor party or independent candidate "competition and influence," *see Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Nevertheless, the prohibition in Section 951(e) of the Election Code against a candidate running simultaneously as an independent in Pennsylvania and as a candidate nominated by another political party applies on equal terms to any candidate or political party or body seeking ballot status in Pennsylvania. Thus the prohibition does not run afoul of the state's interests in regulating elections in Pennsylvania. In *Anderson*, which struck down an Ohio election statute's early filing deadline for independent presidential candidates due to the severe burdens placed on voter freedoms of choice and association, the court addressed the right of states to enact comprehensive election codes to govern the registration and qualification of voters, the selection and eligibility of candidates and the voting process as well. The court expressly noted that a state's "important regulatory interests are generally suffi-

cient to justify reasonable, nondiscriminatory restrictions." *Id.*, 460 U.S. at 788, 103 S.Ct. 1564.

In *In re Nomination Papers of Carlson,* 60 Pa.Cmwlth. 170, 430 A.2d 1210, *aff'd,* 494 Pa. 139, 430 A.2d 1155 (1981), this Court reiterated the principle that "states have a compelling interest in preserving the integrity of the electoral process and in regulating the number of candidates appearing on the ballot." *Id.* at 1212 (citing *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974)). Moreover, it noted, the Election Code provisions regulating nomination papers and affidavits were not mere technicalities but in fact were necessary measures to prevent fraud and to preserve the integrity of the election process. In this regard, the Court set aside a congressional candidate's nomination papers containing a false affidavit.

Finally, as to their statutory construction arguments, Candidates maintain that the applicability of Section 951(e) is limited solely to Pennsylvania registered voters who are candidates for office in this state as opposed to candidates from other states who seek national office. Candidates have offered no rational basis for imposing the disaffiliation restrictions on Pennsylvania registered voters who run for office in this state while at the same time relieving candidates from other states who seek ballot status in Pennsylvania of those very same restrictions. The Court agrees with Objectors that no rational public policy considerations exist for imposing the Section 951(e) restrictions on Pennsylvania registered voters and not imposing them on registered voters from other states.

The law in this Commonwealth is that statutes must be interpreted in a common sense and rational manner and in such a way as to avoid absurd or unreasonable results. *See* Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922; *Commonwealth v. Burnsworth,* 543 Pa. 18, 669 A.2d 883 (1995). Accordingly, the Court concludes that because Candidates have filed nomination papers as candidates of an Independent Political Body for President and Vice President in the November 2004 General Election while simultaneously running as candidates for the same offices in Michigan by nomination of the Reform Party, Candidates' nomination papers were filed in violation of Section 951(e) of the Election Code. Consequently, Candidates' nomination papers must be set aside, and Candidates shall be denied ballot status in Pennsylvania as independent candidates for the office of President and Vice President.[4]

## II

 Although the Court has concluded that Candidates must be denied ballot status in Pennsylvania, the Court shall briefly review and resolve the following procedural objections that were raised in

---

4. With reference to Candidate Camejo, the Court holds that he is further disqualified from gaining ballot status in Pennsylvania as an independent candidate for Vice President because he executed a candidate's affidavit indicating that he complied with Section 951.1 of the Election Code, added by Section 3 of the Act of July 12, 1980, P.L. 649, 25 P.S. § 2911.1, as he was not enrolled in a political party beginning thirty days prior to the primary and up to the date of the following general election. Mr. Camejo was registered as a member of the Green Party from July 29, 2003 until June 22, 2004. *See* Petition to Set Aside, Exhibits 7, 8. *See also Nomination Petition of Cianfrani,* 467 Pa. 491, 359 A.2d 383 (1976) (holding that requirements of sworn affidavits are to insure legitimacy of information crucial to the election process, that a false affidavit must be equated with a failure to execute the affidavit rendering a defect which could not be cured and that as such the nomination petition therefore was void and invalid).

this matter. First, Candidates argue that the objections to later registrations should be stricken. Candidates assert that because the registration process may take several days, persons who sign and mail registration cards during the circulation period may not have appeared on the registration list, yet may be properly registered. As support, Candidates cite this Court's decision in *Petition of Joseph J. O'Hara*, 795 A.2d 513 (Pa.Cmwlth.2002) (single-judge opinion by Simpson, J.). In *O'Hara* the Court reviewed the effects of the Pennsylvania Voter Registration Act[5] and the National Voter Registration Act[6] (commonly referred to as the "Motor–Voter Law") on nomination petitions. Judge Simpson concluded that the postmark on the registration application was the determining factor when a registration is subsequently approved.

Earlier this year the same issue arose and was resolved in a similar fashion. In *Nomination Petition of Roth* (Pa.Cmwlth., No. 121 M.D.2004, filed March 8, 2004) (single-judge opinion by Feudale, S.J.), fourteen signatures were challenged as improperly registered. The evidence showed that the electors had signed voter registration cards on or before the date on which they affixed their signatures to the petition. However, twelve of the fourteen electors delivered their cards personally to the election officials at a later date. Two cards were mailed but received at a later date. As to these signatures, the postmarks were not placed into evidence. The Court in *Roth* found that none of the signatures were proper because a necessary step was lacking: delivery to an appropriate registration official. The reasoning in both cases is adopted here, and the Court

agrees that an elector who has either delivered a completed application to registration officials or has postmarked that application on or before the date of signing the petition is a "qualified elector" under Section 951 of the Election Code. One whose application was delivered or postmarked after the date on which an elector signed nomination papers is not a "qualified elector," and the signature will be stricken.

Candidates next assert that Pennsylvania case law has established very stringent requirements for review of signatures and addresses, citing to the Pennsylvania Supreme Court's decisions in *In re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001), and in *In re Silcox*, 543 Pa. 647, 674 A.2d 224 (1996), as well as to this Court's decision in *In re Nomination Petition of Delle Donne*, 779 A.2d 1 (Pa.Cmwlth.), *aff'd*, 565 Pa. 561, 777 A.2d 412 (2001). These decisions require electors to personally write the required demographic information such as address and municipality as well as the date of signing. Printed signatures are stricken when they do not match a cursive signature in the registration records, even though executed by the elector; likewise for ditto marks. Candidates argue that these decisions have been extremely onerous on candidates who must employ counsel versed in election law to defend against challenges to their nomination petitions and/or papers. Recognizing that this Court does not have the authority to disregard precedent set by the Supreme Court, Candidates nonetheless request this Court to apply a "less stringent" standard to their candidacies.

Notwithstanding the fact that Candidates' observations in this regard may be

---

5. Act of June 30, 1995, P.L. 170, *formerly* 25 P.S. §§ 961.101–961.5109, repealed by Section 5(2) of the Act of January 31, 2002, P.L. 18. Similar provisions are now found in 25 Pa.C.S. §§ 1101–1906.

6. 42 U.S.C. §§ 1973gg–1–1977gg–10.

well founded, the Court must refuse their request to establish a "less stringent" standard in reviewing challenges to the nomination papers. The federal cases cited by Candidates are equally unpersuasive. Candidates do not argue that the number of signatures or the manner in which they are collected and submitted is somehow unduly burdensome. Rather, they seek to establish a lesser standard for judicial review of nomination papers of independent candidates for President and Vice President.[7] Such standard, if applied, would contravene case law and likely implicate significant equal protection issues as well. Thus the Court shall dismiss Candidates' objections to the standard by which the Court must review challenges to nomination papers.

Finally, as Candidates note, the Secretary of the Commonwealth rejected almost 5,000 signatures on the nomination papers for a variety of reasons.[8] Candidates agree that Section 201(d) of the Election Code, 25 P.S. § 2621(d), requires the Secretary to "receive and determine, as hereinafter provided, the sufficiency of nomination petitions, certificates and papers of candidates for President of the United States...." Additionally, Section 976 provides that the Secretary must examine any nomination paper presented within the prescribed period and must reject the same if it does not contain a sufficient number of signatures as required by law. In the event that a nomination paper contains the requisite number of facially valid signatures, the Secretary "although not hereby required so to do, may question the

genuineness of any signature or signatures appearing thereon, and if he ... shall thereupon find that any such signature or signatures are not genuine, such signature or signatures shall be disregarded in determining whether the ... nomination paper ... contains a sufficient number of signatures as required by law...." *Id.*

While there can be no doubt that the Secretary of the Commonwealth is authorized to reject individual signatures or pages of a petition, Candidates argue that this process results in the denial of their right to notice and an opportunity to be heard on the issue. In Pennsylvania a candidate whose nomination papers are rejected by the Secretary of the Commonwealth (or County Board of Elections) may petition the proper court for a writ of mandamus. *See* Section 976 of the Election Code; *Tartaglione v. Graham*, 132 Pa.Cmwlth. 578, 573 A.2d 679 (1990). In certain circumstances, the candidate may seek leave to amend otherwise improper or incomplete affidavits, signatures or other required items. If he or she is successful, the Court orders election officials to accept the papers and preserves a period during which objections may be filed. This process may very well be improper when election officials accept nomination papers but strike various pages or signatures. In that case, the candidate is not aggrieved by acceptance of the papers. *See, e.g., Ochman Appeal*, 364 Pa. 525, 73 A.2d 34 (1950).

The inability of a candidate whose papers have been accepted to challenge the rejection of certain signatures or pages is,

---

7. *Cf. Anderson v. Davis*, 54 Pa.Cmwlth. 60, 419 A.2d 806 (1980) (holding that in judging the validity of election procedures related to independent candidates for President and Vice President, the Court must look to the unique methodology of Pennsylvania's Election Code).

8. In response to an order of this Court, the Secretary of the Commonwealth, on August 24, 2004, submitted his count of the number of signatures submitted by Candidates and the number of signatures rejected by the Secretary. The Secretary rejected 4,936 signatures.

of course, of no consequence unless objections to those papers are later filed. Although the candidate is not aggrieved by the Secretary's rejection of certain signatures when nomination papers are accepted, the presence or absence of those signatures may well be the deciding factor in a later objection proceeding. The question then becomes: through what procedure may a candidate challenge the rejections?

One possible method would be to bring a mandamus petition against the election officials to reinstate the stricken signatures, although this method may be impractical due to the time periods involved and hypothetically would require yet another period during which objections could be filed following a successful mandamus action. The better approach, perhaps, is for the objector to include in his or her objections the signatures already alleged to have been stricken by the election officials, which apparently occurred here. *See* Exhibit 3 to Objections to the Nomination Papers. The objector should state the apparent reasons for rejecting the signatures, and the candidate is then placed on notice that the signatures are being challenged and that an opportunity exists for the candidate to defend against the challenges. This procedure remains uncomplicated, it allows the parties an opportunity to challenge or defend the election official's action in striking the signatures and it furthers the statutory goal of deciding objections in a timely fashion. The Court, therefore, dismisses Candidates' objections to action taken by the Secretary of the Commonwealth in striking signatures from the nomination papers before accepting them for filing.

## III

In conclusion, for the reasons articulated in this opinion, the Court holds that Ralph Nader and Peter Miguel Camejo are dis-

qualified from being nominated as Candidates of an Independent Political Body for President and Vice President in the 2004 General Election because their nomination papers fail to comply with the requirements of Section 951(e) of the Election Code. Candidates nomination papers shall be set aside, and they shall be denied ballot status in Pennsylvania. The Court further dismisses Candidates' objections to the standards followed by the Court in reviewing signature challenges to nomination papers and their objections to the process followed by the Secretary of the Commonwealth in rejecting signatures on the nomination papers.

## *ORDER*

AND NOW, this 30th day of August 2004, following oral argument on the petition of Candidates Ralph Nader and Peter Miguel Camejo to dismiss challenges to the nomination papers filed in this matter and Objectors' response thereto, the Court hereby orders that the nomination papers of Mr. Nader and Mr. Camejo as Candidates of an Independent Political Body for President and Vice President in the General Election of November 2, 2004 be and are hereby set aside.

The Chief Clerk of the Commonwealth Court is directed to notify all parties and Counsel of record of the entry of this order and shall certify a copy hereof to the Secretary of the Commonwealth. The Secretary is directed not to print the names of Ralph Nader and Peter Miguel Camejo on the ballot for the 2004 General Election. All parties shall bear their own costs.