905 A.2d 450

**In re Nomination Paper of Ralph NADER and Peter Miguel Camejo as Candidates of an Independent Political Body for President and Vice President in the General Election of November 2, 2004.**

**Linda S. Serody, Roderick J. Sweets, Ronald Bergman, Richard Trinclisti, Terry Trinclisti, Bernie Cohen–Scott, Donald G. Brown and Julia A. O'Connell.**

**Appeal of Ralph Nader and Peter Miguel Camejo, and Their Independent Electors.**

**In re Nomination Paper of Ralph Nader and Peter Miguel Camejo as Candidates of an Independent Political Body for President and Vice President in the General Election of November 2, 2004.**

**Linda S. Serody, Roderick J. Sweets, Ronald Bergman, Richard Trinclisti, Terry Trinclisti, Bernie Cohen–Scott, Donald G. Brown and Julia A. O'Connell.**

**Appeal of Ralph Nader and Peter Miguel Camejo, and Their Independent Electors.**

Supreme Court of Pennsylvania.

Argued March 1, 2006.

Decided Aug. 22, 2006.

See also 865 A.2d 8.

452

Marcus James Lemon, Esq., Ronald Lee Hicks, Jr., Esq., Basil Culyba, *pro hac vice*, Ross A. Dreyer, *pro hac vice*, Harrisburg, for Ralph Nader/Peter Miguel Camejo.

Daniel I. Booker, Esq., Pittsburgh, for Linda S. Serody.

Efrem M. Grail, Esq., Pittsburgh, for Ronald Bergman.

Cynthia E. Kernick, Esq., Pittsburgh, for Richard Trinclisti.

Kim M. Watterson, Esq., Melissa Joy Oretsky, Pittsburgh, for Bernie Cohen–Scott.

Louis Lawrence Boyle, Esq., for Bureau of Elections.

Michelle Stirman Pierson, Esq., Marcus James Lemon, Esq., J. Matthew Wolfe, Esq., Ronald Lee Hicks, Jr., Esq., Andrew Lee Noble, Esq., Basil Culyba, *pro hac vice*, Ross A. Dreyer, *pro hac vice*, for Peter Miguel Camejo/Ralph Nader.

William S. Gordon, Esq., Christopher K. Walters, Esq., Ira Steven Lefton, Esq., Philadelphia, for Linda S. Serody.

Milind Madhukar Shah, Esq., Barbara Kiely, Esq., for Roderick J. Sweets.

Nicholas R. Sabatine, III, Esq., Windgap, for Ronald Bergman.

Andrea Beth Simonson, for Richard Trinclisti.

Melissa Joy Oretsky, Philadelphia, for Bernie Cohen–Scott.

James P. Williamson, Philadelphia, for Donald G. Brown.

Brian Anthony Gordon, Esq., Gregory M. Harvey, Esq., Philadelphia, for Julia A. O'Connell.

Kim M. Watterson, Esq., Pittsburgh, for et al Linda S. Serody.

Cynthia E. Kernick, Esq., Jeffrey John Bresch, Esq., James Michael Doerfler, Esq., Jeremy David Feinstein, Esq., Mark Lawrence Tamburri, Esq., Efrem M. Grail, Esq., Lisa M. Campoli, Daniel I. Booker, Esq., John M. McIntyre, Pittsburgh, for et al Linda Serody.

Louis Lawrence Boyle, Esq., for Bureau of Commissions, Elections and Legislation.

Thomas W. Corbett, Jr., Esq., Harrisburg, for Commonwealth of PA.

Before: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice NEWMAN.

Appellants Ralph Nader (Nader) and Peter Miguel Camejo (Camejo) appeal two Orders of the Commonwealth Court assessing costs against them individually and against their unsuccessful campaign for the respective offices of President and Vice–President of the United States. For the reasons that follow, we affirm the Orders of the Commonwealth Court that required Appellants to pay transcription and stenography costs in the amount of $82,102.19 to Appellees.

## FACTS AND PROCEDURAL HISTORY

Appellees are registered voters in Pennsylvania who waged a successful battle to set aside Nomination Papers that Appellants filed to secure positions as candidates on the Pennsylvania ballot for the November 2, 2004 General Election. The Commonwealth Court granted the relief that Appellees sought and found that wide-ranging fraud and deception had occurred during the signature-gathering process of Appellants. The stenographic and transcription costs that are the subject of this Opinion were incurred during hearings held regarding Appellees' challenge.

A review of the extensive litigation history regarding the campaign of Appellants is essential to understanding the issue presented today. The genesis of the controversy dates back to August 2, 2004, when Appellants filed Nomination Papers to appear as candidates on the Pennsylvania ballot for the November 2, 2004 General Election. On August 9, 2004, Appellees Linda S. Serody, *et al.*, filed a Petition alleging that the Nomination Papers contained insufficient valid, genuine, authentic, and complete signatures to qualify Nader and Camejo to appear on the ballot.

Appellants filed Initial Objections to the Petition on August 17, 2004, and on August 19, 2004, the Commonwealth Court ordered the parties to present all pre-trial evidentiary objections, including questions with regard to the manner in which

the Commonwealth Court would review the challenged signatures. Appellants filed an Application to Dismiss the Petition, along with additional Objections on August 23, 2004 and August 24, 2004.

On August 30, 2004, the Commonwealth Court set aside the Nomination Papers and disqualified Nader and Camejo from the ballot because they had accepted the nomination of the Reform Party in Michigan, thus violating Section 951(e) of the Election Code.[1] The Commonwealth Court further disqualified Camejo for the reason that his candidate's affidavit falsely indicated that he was not enrolled in a political party, despite the fact that he was a member of the California Green Party. The Order also addressed Appellants' procedural objections. *In re Nomination Paper of Ralph Nader*, 856 A.2d 908 (Pa.Cmwlth.2004) (*rev'd, In re Nomination Paper of Ralph Nader*, 579 Pa. 561, 858 A.2d 58 (2004)).

Appellants appealed that Order to our Court, and on September 20, 2004, we reversed and vacated the Order and remanded the case for expedited evidentiary hearings. *In re Nomination Paper of Ralph Nader*, 579 Pa. 561, 858 A.2d 58 (2004). In a subsequently issued Opinion, we addressed Appellants' procedural challenges. *In re Nomination Papers of Ralph Nader*, 580 Pa. 22, 858 A.2d 1167 (2004).

1. Section 951(e) of the Election Code provides that:

There shall be appended to each Nomination Paper offered for filing an affidavit of each candidate nominated therein, stating—(1) the election district in which he resides; (2) the name of the office for which he consents to be a candidate; (3) that he is eligible for such office; (4) that he will not knowingly violate any provision of this act, or of any law regulating and limiting election expenses, and prohibiting corrupt practices in connection therewith; (5) that his name has not been presented as a candidate by nomination petitions for any public office to be voted for at the ensuing primary election, nor has he been nominated by any other Nomination Papers filed for any such office; (6) that in the case where he is a candidate for election at a general or municipal election, he was not a registered and enrolled member of a party thirty (30) days before the primary held prior to the general or municipal election in that same year; (7) that, in the case where he is a candidate for election at a special election, he is not a registered and enrolled member of a party.

25 P.S. § 2911(e), declared unconstitutional as applied by *In re Nomination Papers of Ralph Nader*, 580 Pa. 22, 858 A.2d 1167 (2004).

On remand, the Commonwealth Court dedicated monumental effort and resources to implement the standards for signature review that we addressed. The court provided detailed and comprehensive hearing procedures and schedules to promote fairness and efficiency with respect to the challenged signatures. The Commonwealth Court held weeks of hearings across the Commonwealth, with twelve judges conducting a line-by-line review of the challenged signatures in sixty-three counties.[2]

In addition to regular business hours, the court sat on evenings and weekends. The Commonwealth Court issued continuances regarding its regular hearing schedule to enable the judges to conduct these hearings.

After the hearings commenced, Appellants filed an Application to Amend the Order, arguing that the signatures of individuals who are not registered voters should be counted in evaluating the sufficiency of the Nomination Papers. On September 27, 2004, the Commonwealth Court denied this Application.

On September 27, 2004, Appellants filed an Application for Extraordinary Relief, asking this Court to exercise King's Bench jurisdiction. We denied that request, with Mr. Justice Saylor filing a concurring and dissenting opinion.

The previously mentioned statewide hearings in Commonwealth Court that began on September 27, 2004, continued until October 12, 2004. On October 13, 2004, the Commonwealth Court, following three weeks of hearings throughout the state, issued its Findings, Opinion, and Order setting aside the Nomination Papers. The court ordered the Secretary of the Commonwealth not to certify Appellants' names as candidates in the November 2, 2004 General Election.

The Order of the Commonwealth Court concluded that the Nomination Papers did not contain the required 25,697 valid

2. President Judge Colins, Judges Smith–Ribner, McGinley, Pellegrini, Friedman, Leadbetter, Cohn Jubelirer, Simpson, and Senior Judges Mirarchi, Kelley, Jiuliante, and Flaherty presided over the signature review process. There were four counties in which no challenges to the Nomination Papers were filed.

signatures and found that the Nomination Papers contained only 18,818 valid signatures. Nearly two-thirds of the signatures that had been submitted in support of the Appellants were struck. The court concluded that:

> **[T]his signature gathering process was the most deceitful and fraudulent exercise ever perpetrated upon this Court. The conduct of the [Appellants] through their representatives (not their attorneys) shocks the conscience of the Court.** In reviewing signatures, it became apparent, that in addition to signing names such as "Mickey Mouse," "Fred Flintstone," "John Kerry," and the ubiquitous "Ralph Nader," **there were thousands of names that were created at random and then randomly assigned either existent or non-existent addresses by the circulators.**

Commonwealth Court, October 13, 2004, Consolidated Findings, Opinion, and Order at 14 (emphasis added).

The Commonwealth Court issued the first Order that is the subject of this appeal on October 14, 2004. The Order stated:

> [E]xcept as otherwise ordered, all costs for court stenographer appearances and transcript preparation are hereby assessed against the Nader/Camejo campaign, Ralph Nader and Peter Miguel Camejo individually. The Chief Clerk is directed to forward any future invoices filed with the court by any court stenographer involved in the hearings … to the Nader/Camejo campaign and Ralph Nader and Peter Miguel Camejo for payment.

Commonwealth Court Order, 568 M.D.2004, October 14, 2004.

On that same day, Appellants appealed to our Court from the Order of October 13, 2004, setting aside the Nomination Papers. Appellants also filed an Application for Supersedeas asking this Court to stay the Commonwealth Court Order.

On October 19, 2004, we issued a *per curiam* Order affirming the October 13, 2004 Order of the Commonwealth Court. Mr. Justice Saylor filed a dissenting statement on October 22, 2004. We also denied the Application for Supersedeas.

The Commonwealth Court issued its second Order relevant to this appeal on January 14, 2005. That Order stated that "the Court having given consideration to [Appellees'] Bill of Costs and the response filed in opposition thereto, said Bill of Costs is approved and [Appellants] are directed to pay $81,102.19 to [Appellees]." Commonwealth Court Order, 568 M.D.2004, January 14, 2005.

A Bill of Costs submitted to the Commonwealth Court identified $42,835.19 of the total amount as costs of court reporter appearances, transcription of proceedings, and transcripts. Appellees' Reproduced Record, 17 MAP 2005, Petitioners' Bill of Costs, II. "Itemized Listing of Costs." The costs imposed for handwriting expert witnesses totaled $38,267.00. *Id.*

Appellants appealed these two Orders separately, with each case assigned its own docket number. On October 13, 2005, this Court granted oral argument and consolidated the separate matters. The Court issued a briefing schedule and directed the parties to file supplemental briefs on three issues: (1) whether the Order of the Commonwealth Court dated October 14, 2004, was an appealable Order; (2) whether the Commonwealth Court had jurisdiction to enter the Order dated January 14, 2005; and (3) whether Appellants preserved the question of the Commonwealth Court's authority to assess costs against them under 25 P.S. § 2937.[3]

3. Section 2937 (**Objections to nomination petitions and papers**) provides:

> **All nomination petitions and papers** received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside. On the day fixed for said hearing, the court shall proceed without delay to hear said objections, and shall

The parties presented oral argument on these issues on March 1, 2006.

## DISCUSSION

■ "[A]ppellate review of an order of a tribunal awarding counsel fees to a litigant is limited solely to determining whether the tribunal palpably abused its discretion in making the fee award." *Lucchino v. Commonwealth*, 570 Pa. 277, 809 A.2d 264, 268–69 (2002) (citing *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295, 299 (1996)).[4]

■ The costs assessed to Appellants were incurred during hearings held with respect to the challenge of Appellees to their Nomination Papers. In proceedings involving challenges to a nomination paper, the appellate court will reverse a trial court order only when the findings of fact are not supported by substantial evidence, there was an abuse of discretion, or errors of law were committed. *In re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327, 331 (2001).

The underlying issue for our examination is whether the Commonwealth Court was authorized to impose costs on Appellants, where Appellees were victorious in setting aside the Nomination Papers of those candidates. For the reasons that

> give such hearing precedence over other business before it, and shall finally determine said matter not later than fifteen (15) days after the last day for filing said nomination petitions or papers. If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside. If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, **the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify. In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just.**
> 25 P.S. 2937 (emphasis added).

4. In the matter *sub judice*, the Commonwealth Court Orders imposed only the actual costs of the litigation, which included the stenographic and transcription costs related to the hearings. The Orders did not encompass the legal fees that Appellees incurred in bringing their challenge.

follow, we affirm the Orders of the Commonwealth Court, based on statutory authority set forth at 25 P.S. § 2937 and the dictates of our prior case law.

The first question we set forth in our briefing Order was whether the October 14, 2004 Order was appealable. The briefing by the parties on this issue was cursory, with Appellants and Appellees agreeing that the Order should be considered appealable. However, this Court " 'has only that jurisdiction as is provided by law[,]]' " and the appealability of an order raises an issue of the jurisdiction of the Court. *Commonwealth v. Saunders*, 483 Pa. 29, 394 A.2d 522, 524 (1978) (quoting, PA. CONSTIT. ART. V § 2(c)). The fact that Appellees in the instant matter agreed that the Order was appealable cannot confer jurisdiction on the Court if it is otherwise lacking.

Section 723 of the Judicial Code provides this Court with jurisdiction and states that as a general rule, "[t]he Supreme Court shall have exclusive jurisdiction of appeals from **final orders** of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court except an order entered in a matter which constitutes an appeal to the Commonwealth Court from another court, a magisterial district judge or another governmental unit." 42 Pa.C.S. § 723(a) (emphasis added). Accordingly, for the October 14, 2004 Order to be appealable, it must constitute a "final order" of the Commonwealth Court.

Pursuant to Pa.R.A.P. 341(d)(1), a final order is "any order: that (1) disposes of all claims and all parties. . . ." The October 14, 2004 Order did not dispose of the entire case of Appellants; therefore, it was not a final order. However, the subsequent Order of January 14, 2005, which established the amount that the Appellants were required to pay, ended the litigation and is a final order from which an appeal was permitted.

Accordingly, with respect to the first issue, we hold that the October 14, 2004 Order was not a final Order and, as a result, we quash the appeal taken from that Order. Further, as to the contention of Appellees that Appellants waived

the statutory argument concerning Section 2937 because they did not raise it in their appeal of the first Order, Appellants did advance that argument with respect to their appeal of the January 14, 2005 Order, and we find that the issue was not waived.

Despite the explicit findings of the Commonwealth Court regarding the massive deception and fraud involved in Appellants' signature campaign to qualify as candidates on the Pennsylvania ballot in the 2004 General Election, Appellants adhere to their position of victimization and blamelessness. "[T]he candidates [sic] nominating papers were not set aside based on any wrongdoing by the campaign or the candidates, but rather on a serious and legitimate question of statutory construction.... " Brief of Appellants at 10.

Soldiering on with this same perspective, Appellants advise us that "[n]ow, their resources exhausted, [they] are assessed costs for defending their right to seek political office and, in so doing, have brought before this Court a case of first impression on a most substantive question of Pennsylvania Election Code interpretation that will inform all future elections in the Commonwealth." *Id.* at 10–11.

Appellants are incorrect on all points: (1) the Commonwealth Court did not assess costs in order to penalize Appellants' exercise of political speech; (2) the Election Code authorizes the assessment of costs; and (3) this Court has validated the imposition of costs where a nomination petition has been set aside in *In re Nominating Petition of Esther M. Lee,* 525 Pa. 155, 578 A.2d 1277, 1279 n. 3 (1990).[5]

Pursuant to setting aside nomination petitions or papers, Section 2937 provides:

> If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors

5. In *Lee,* we reversed the Order of the Commonwealth Court that set aside the nomination petition of the candidate because the objector had failed to serve the Secretary of the Commonwealth with the petition to set aside. However, we noted that a court can impose costs, *inter alia,* when a nominating petition is set aside.

entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside. If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, **the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify. In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just.**

25 P.S. § 2937 (emphasis added).

Thus, pursuant to Section 2937, the court, in situations it deems just, has the discretion to impose costs. Appellants' interpretation of this section is at best confusing and not well articulated.

█ First, Appellants claim that Section 2937 "does *not* authorize an award of costs against a candidate whose nomination *papers* are set aside." Supplemental Brief of Appellants at 4. Appellants argue that "[n]o where in § 2937 did the legislature confer subject matter jurisdiction on the court to order the payment of costs in any case where nomination papers are dismissed." *Id.* However, they provide no support for their position that the authority of a court to impose costs varies depending on whether it is adjudicating a challenge to a nomination petition as opposed to a nomination paper.

Appellants misconstrue that portion of Section 2937, which provides that "[i]n case any such **petition** is dismissed," costs can be awarded. Contrary to their assertion that the use of the word "petition" creates a distinction between nominating petitions and nomination papers, this Court, in discussing the meaning of "petition" at that Section, has determined that this phrase "discusses *both* nomination petitions and petitions to set aside a nomination petition. Thus, the court can impose costs, as justice requires, when either the nominating petition is set aside or the petition to set aside the nomination petition is dismissed." *In re Nominating Petition of Esther M. Lee,*

578 A.2d at 1279 n. 3. We did not make the distinction between "nomination papers" and "nomination petitions" that Appellants proffer. Instead, we affirmed the authority of the court "to impose costs, as justice requires" when a nominating petition is set aside. *Id.* In the instant case, the Commonwealth Court set aside Appellants' Nomination Papers based on "the most deceitful and fraudulent exercise ever perpetrated upon this Court." Commonwealth Court, October 13, 2004, Consolidated Findings, Opinion, and Order at 14.

■ In another misguided effort, Appellants argue that Section 2937 does not confer "subject matter jurisdiction on the court" to impose costs where nomination papers are dismissed, and that a court can do so only when a nomination petition is dismissed. This contention that the Commonwealth Court lacked "subject matter jurisdiction" to award costs is erroneous. Clearly, the Commonwealth Court possesses authority pursuant to the Election Code to adjudicate disputes concerning elections. Pursuant to 42 Pa.C.S. § 764 (Election contests and other matters), the Commonwealth Court has original exclusive jurisdiction of matters relating to statewide office, including the instant dispute challenging the qualification of Appellants to appear on the Pennsylvania ballot as candidates for the offices of President and Vice–President of the United States. The issue of imposition of costs is clearly related to the Commonwealth Court's adjudication of the challenged Nomination Papers of Appellants.

■ Finally, in their scattershot approach, Appellants allege that the Orders imposing costs are "manifestly unfair and constitute[ ] an unconstitutional penalty against the exercise of political speech." Brief of Appellants at 11. Appellants demonstrate their continuing state of denial regarding the findings of the Commonwealth Court that "[t]he conduct of the Candidates, through their representatives (not their attorneys) shocks the conscience of the Court." Commonwealth Court Opinion, Consolidated Findings, Opinions and Order at 13–14.

Not every statute that impinges on a political candidate in some fashion, no matter how farfetched, is unconstitutional.

The United States Supreme Court has held that "[a]lthough these rights of voters [the right to vote and to political association] are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Further, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* (citation omitted).

Appellants' constitutional challenge cannot succeed because the cost provision in Section 2937 does not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny. Appellants have provided no evidence to show how the assessment of costs, following a finding by the Commonwealth Court that nearly two-thirds of the signatures on the nomination papers were invalid, penalized their exercise of free speech.

 Even if the statute did burden ballot access, which it did not, the burden would be reasonable and rationally related to the interest of the Commonwealth in ensuring honest and fair elections. Unlike the provision declared unconstitutional in *Anderson*, where an Ohio statute imposed a disparate early filing requirement on an independent candidate for the office of President, Section 2937 allows the court to impose costs where the court deems it just. This is consistent with the interest of the Commonwealth in ensuring fair elections that are free from the taint of fraud. "[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). "[L]imiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Id.* at 440 n. 10, 112 S.Ct. 2059.

Given the magnitude of the fraud and deception implicated in Appellants' signature-gathering efforts, their claim that the Commonwealth Court acted in an unjust and unconstitutional fashion by assessing transcription and stenography costs does not pass the straight-face test. The legislature has determined that the court, in its discretion when it deems it just, can impose costs. Absent a palpable abuse of discretion, "it is not for the courts to undermine that determination by making a case by case assessment of" what the court found to be just with respect to the campaign that Appellants waged. *In re Nominating Petition of Esther M. Lee*, 578 A.2d at 1279.[6]

## CONCLUSION

The Commonwealth Court acted pursuant to statutory authority in assessing costs to Appellants, where their signature-gathering campaign involved fraud and deception of massive proportions. Appellants have raised no cognizable constitutional claim to invalidate the issuance of the Orders that imposed the costs of the hearings on Appellants. Precedent of this Court has established that the court is authorized to impose costs when a nominating petition is set aside or a petition to set aside a nominating petition is dismissed. *See In re Nominating Petition of Esther M. Lee*, 525 Pa. 155, 578 A.2d 1277, 1279 n. 3 (1990). Appellants have failed to demonstrate that the Commonwealth Court's findings of fact were not supported by substantial evidence, that there was an abuse of discretion, or that errors of law were committed.

Accordingly, we quash the appeal taken from the Order of October 14, 2004, and affirm the January 14, 2005 Order of the Commonwealth Court.

Chief Justice CAPPY and Justice CASTILLE and BAER and Justice BALDWIN join the opinion.

---

**6.** In *Lee*, the provision of Section 2937 that we reviewed regarded the requirement to file a petition objecting to nomination papers or petitions with the Secretary of the Commonwealth. However, the principle of respecting the determination of the legislature is analogous to the one we determine *sub judice*.

Justice EAKIN files a concurring and dissenting opinion.

Justice SAYLOR files a dissenting opinion.

Justice EAKIN, concurring and dissenting.

I agree with Mr. Justice Saylor's analysis of 25 P.S. § 2937; however, I write separately to note certain costs the Commonwealth Court ordered appellants to pay may have been awarded under separate authority.

The Commonwealth Court's October 14, 2004 order required appellants to pay transcription and stenography costs, but did not cite any authority for that charge. The court did not write an opinion explaining its rationale. The Commonwealth Court's January 14, 2005 order directed appellants to pay $81,102.19 in total costs and likewise omitted any citation to authority or opinion explaining its rationale. As the majority notes, a bill of costs submitted to the Commonwealth Court identified $42,835.19 of the total amount as costs of court reporter appearances, transcription of proceedings, and transcripts. Majority Slip Op., at 7 (citing Appellees' Reproduced Record, 17 MAP 2005, Petitioners' Bill of Costs, II. "Itemized Listing of Costs."). The costs imposed for handwriting expert witnesses totaled $38,267.00. *Id.*

While § 2937 cannot provide the basis for the January 14, 2005 order, the court could have levied the $42,835.19 in costs under § 322 of its Internal Operating Procedures.[1] However, there is no alternate provision authorizing the imposition of expert witness fees in this instance;[2] thus, the Commonwealth Court lacked authority to charge appellants for the $38,267.00 in expert witness costs. Accordingly, I would affirm the January 14, 2005 order to the extent it awarded $42,835.19 in

1. Section 322 provides in relevant part, "In any proceeding where a stenographer is present, the presiding judge or duty judge shall, incident to the disposition of the proceeding, provide by order for the allocation of the costs for the stenographer. Such costs normally include the appearance fee and the cost for the transcription of the notes of testimony . . . ." 42 Pa.C.S. § 322.

2. The rules of civil procedure are not applicable to a challenge to a nomination petition or paper. *In re Nomination Petition of Johnson,* 509 Pa. 347, 502 A.2d 142, 145 (1985).

costs, and I would reverse it to the extent it awarded an additional $38,267.00 in costs.

Justice SAYLOR, dissenting.

I respectfully dissent, as I believe that Section 977 of the Election Code, by its terms, authorizes an assessment of costs against objectors upon the dismissal of petitions challenging nomination petitions and papers, but not against candidates upon the setting aside of nomination petitions and papers.

As the majority notes Section 977 provides, in relevant part, as follows:

**Objections to nomination petitions and papers:**

All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, *a petition* is presented to the court specifically *setting forth the objection thereto,* and praying that the said petition or paper be set aside. A copy of *said petition* shall, within the said period, be served on the officer of board with whom said nomination petition or paper was filed. Upon the presentation of *such a petition,* the court shall make an order fixing a time for hearing ... If the court shall find that said nomination petition or paper is defective ... it shall be set aside. ... In case *any such petition* is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just....

25 P.S. § 2937 (emphasis added). It seems apparent, at least to me, that each of the three highlighted references to "said petition," "such a petition," and "any such petition" is an abbreviated reference back to the petition to set aside nomination petitions and papers that is delineated at the outset of the statutory provision.

The majority's holding, however, is apparently that the last of these encompasses not only objection petitions, but additionally serves as a generic reference also subsuming both nomination petitions and papers filed by candidates. *See*

Majority Opinion, *slip op.* at 11–12. I find such reading to be implausible for several reasons.

First, the two prior references back in the statute clearly could not serve such an enlarged function, since their context (discussing the service of objections and the requirement of a hearing triggered by the filing of objections) makes plain that they refer exclusively to objectors' petitions to set aside. I therefore have difficulty with the conclusion that a third and parallel reference was intended by the Legislature to serve a much more expansive purpose. Second, nowhere else in the statute (and, at least to my knowledge, in the Election Code) did the General Assembly use the word "petition" to generically include both nomination petitions and papers, let alone nomination petitions, nomination papers, and objections to nomination petitions and papers. Indeed, the General Assembly was otherwise very careful in Section 977 to specify both nomination "petitions and papers" in every proviso in which the candidates' filings are addressed. Further, a broad, generic use of the word "petition" to address three discrete forms of documents under the Election Code spanning both candidate and objector submissions is not only uncharacteristic, but also seems to me to be unnatural. Moreover, the more natural construction of the statute is consistent with the precept that the Election Code should be construed liberally, in favor of candidates' ballot access. *See In re Nomination Petition of Driscoll,* 577 Pa. 501, 507, 847 A.2d 44, 48 (2004). Fourth, in delineating the consequences of the filing of defective nomination petitions and papers, Section 977 indicates that these documents should be "set aside" upon appropriate and meritorious challenge, 25 P.S. § 2937, whereas the assessment of costs is authorized by the statute only when a petition is "dismissed." *Id.* The phraseology of "setting aside" attaching to the treatment of nomination petitions and papers comports with their filing with the Secretary of the Commonwealth or county boards of elections as opposed to in courts of law, *see* 25 P.S. §§ 2873, 2913, whereas, the use of the term "dismissal" in the cost-assessment provision more properly

470 

aligns with the disposition of documents submitted to the courts, here, objection petitions.

Finally, I do not find the Court's brief, footnoted expression to the contrary in *In re Nominating Petition of Lee*, 525 Pa. 155, 578 A.2d 1277 (1990), to be controlling. *See id.* at 160 n. 3, 578 A.2d at 1279 n. 3 (indicating that "the court can impose costs, as justice requires, when either the nominating petition is set aside or the petition to set aside the nominating petition is dismissed"). Significantly, such statement is manifestly dictum, since the Court had otherwise found no basis to support an award of costs against the candidate, who was successful in having his nomination petition reinstated. *See id.* at 160, 578 A.2d at 1279. Therefore, the statement is not binding in this case, *see Commonwealth v. Singley*, 582 Pa. 5, 15, 868 A.2d 403, 409 (2005) (expressing the axiom that "a statement in [a] prior opinion, which clearly was not decisional but merely *dicta*, 'is not binding upon us' " (citation omitted)), in which the majority finds the relevant issue to be adequately preserved and squarely before the Court.

In summary, I believe that cost award against Appellants lacks a statutory basis, and therefore, I would reverse the orders of the Commonwealth Court.