

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-23-2006

# Rogers v. Corbett

Precedential or Non-Precedential: Precedential

Docket No. 06-2241

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Rogers v. Corbett" (2006). *2006 Decisions.* Paper 502.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/502

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-2241

———————

MARAKAY J. ROGERS, Esquire, Candidate
for Governor of Pennsylvania; THE GREEN PARTY
OF PENNSYLVANIA, c/o Paul Teese, Chair; THE
CONSTITUTION PARTY OF PENNSYLVANIA;
KEN V. KRAWCHUK; HAGAN SMITH,

Appellants.

v.

THOMAS W. CORBETT, JR., Attorney General
of Pennsylvania; COMMONWEALTH OF
PENNSYLVANIA,
c/o Office of the Attorney General of Pennsylvania;
GOVERNOR EDWARD G. RENDELL; PEDRO A.
CORTES,
Secretary of Commonwealth of Pennsylvania

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 06-cv-00066
District Judge: Hon. John E. Jones, III

———————

Argued on July 10, 2006

Before: SMITH, ALDISERT, and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 23, 2006)

———————

Samuel C. Stretton, Esquire (Argued)
301 South High Street
P. O. Box 3231
West Chester, PA    19381-3231

Counsel for Appellants

Thomas W. Corbett, Jr., Esquire
Attorney General
Howard G. Hopkirk, Esquire (Argued)
Senior Deputy Attorney General
John G. Knorr, III, Esquire
Chief Deputy Attorney General
Chief, Appellate Litigation Section
Office of the Attorney General of Pennsylvania
Strawberry Square, 15th Floor
Harrisburg, PA   17120

Counsel for Appellees

**ROTH**, Circuit Judge:

Plaintiffs, a group of minor political parties and minor party nominees for state-wide office,[1] challenged the constitutionality of Section 2911 of the Pennsylvania election code, 25 PA. CONS. STAT. § 2911(b), as applied to minor political parties and their candidates.  They moved for a

---

[1]Plaintiffs are Marakay Rogers, Esq., the Green Party candidate for Governor in the November 2006 general election; the Green Party of Pennsylvania; Hagan Smith, the Constitution Party candidate for Governor; the Constitution Party of Pennsylvania; and Ken V. Krawchuk, the Libertarian Party candidate for the United States Senate.

2

preliminary injunction against Pedro A. Cortes, Secretary of the Commonwealth of Pennsylvania. The District Court denied the motion and plaintiffs appealed. For the reasons stated below, we will affirm the judgment of the District Court.

## I.    Background

Under Pennsylvania law, a political body is qualified as a political party when one of its candidates obtains a 2% level of support in the preceding general election. Specifically, 25 PA. CONS. STAT. § 2831(a) defines a political party as:

> Any party or political body, one of whose candidates at the general election next preceding the primary polled in each of at least ten counties of the State not less than two per centum of the largest entire vote cast in each of said counties for any elected candidate, and polled a total vote in the State equal to at least two per centum of the largest entire vote cast in the State for any elected candidate, is hereby declared to be a political party within the State.

Pennsylvania law further distinguishes between political parties (a/k/a/ major political parties) and minor political parties. Minor political parties are political parties with registered membership of less than 15% of the state-wide registration for all political parties.[2]

Political parties, *i.e.*, at present the Republican and Democrat parties, place their candidates on the general election ballot via a primary system. 25 PA. CONS. STAT. § 2862. To appear on the ballot for the primary election, the Republican and Democrat candidates must get a prescribed number of signatures

---

[2]A minor political party is defined in 25 PA. CONS. STAT. § 2872.2 as a:

> political party . . . whose State-wide registration is less than fifteen per centum of the combined State-wide registration for all State-wide political parties as of the close of the registration period immediately preceding the most recent November election.

from individuals who are members of their respective parties. For example, a candidate for Governor must obtain 2,000 signatures. The winner of a plurality of votes in the primary is placed on the general election ballot as the candidate of his or her respective party.

Minor political parties, as well as political bodies not recognized as parties, place their candidates, and independent candidates place their names, on the general election ballot by nomination petitions. 25 PA. CONS. STAT. §§ 2872.2, 2911. To be placed on the general election ballot by a nomination petition, the candidate must obtain the signatures of a prescribed number of registered voters (regardless of party). The number of signatures must be equal to 2% of the vote total of the candidate who obtained the highest number of votes for state-wide office in the previous election.[3]

Candidates have approximately five months to circulate nomination petitions. For the November 2006 general election, petitions can be circulated from March 8, 2006, until August 1, 2006. A signatory must be a qualified elector of Pennsylvania who has registered to vote either on or before the day he signs the nomination petition. A signatory need not be a member of a political party. A signatory may sign a minor party candidate's nomination petition even if he has signed a nomination petition in support of a Republican or Democrat or voted in a major party primary, but a signatory may sign a nomination petition in support of only one candidate for each office for which there is a vacancy.

Unfortunately for minor political parties, political bodies

---

[3]25 PA. CONS. STAT. § 2911(b) provides that:

Where the nomination is for any office to be filled by the electors of the State at large, the number of qualified electors of the State signing such nomination paper shall be at least equal to two per centum of the largest entire vote cast for any elected candidate in the State at large at the last preceding election at which State-wide candidates were voted for.

4

and independent candidates, Bob Casey, Jr., soundly defeated his challenger for State Treasurer in 2004 in the biggest voter turnout in Pennsylvania history. Consequently, the "largest entire vote cast for any elected candidate in the State at large" is larger this cycle than in previous election years, based on Casey's high total. As such, 2% of that total, the number of required signatures, is 67,070, compared to previous years in which the number generally ranged between 30,000 and 50,000.[4]

Plaintiffs are challenging the constitutionality, as applied to minor political parties, of the 2% variable threshold requirement of § 2911(b) for a candidate to be placed on the general election ballot. The feature which distinguishes plaintiffs' argument from previous attacks on § 2911(b) is that plaintiffs are challenging the combination of § 2831(a)'s 2% precondition to qualify as a political party and § 2911(b)'s 2% signature requirement that a minor political party must obtain in order for its candidates to be placed on the general election ballot. Plaintiffs contend that, having shown the 2% voter support in the previous election, they have shown their necessary "modicum" of support and should not have to petition to place candidates on the ballot.

Plaintiffs brought an action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 on the grounds that § 2911(b) violates both the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and the minor political parties' right of freedom of association under the First Amendment. For relief, plaintiffs have asked the District Court to enter an order allowing their parties' nominees to be placed on the general election ballot if they obtain the same number of signatures that candidates for the Republican and Democrat parties need to be placed on the primary ballot. Alternatively, plaintiffs have proposed other schemes to allow minor political party candidates to be placed on the general election ballot after demonstrating a lesser level of support. Plaintiffs also urge that minor political parties ought not to be subject to any signature requirement in light of the fact that they have already qualified

---

[4]The previous high number was 58,035 in 1989.

as a political party.

The parties jointly stipulated to the applicable facts. On April 5, 2006, the District Court denied the plaintiffs' motion for a preliminary injunction on the ground that § 2911(b) was constitutional. At the same time, the District Court strongly urged the Pennsylvania General Assembly to reconsider the 2% threshold in light of the 67,070 signatures needed this cycle. This timely and expedited appeal followed.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1292(a)(1) (noting that "the courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.").

Ordinarily, we use a three-part standard to review a District Court's decision to grant or deny a preliminary injunction. *Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004). The District Court's findings of fact are reviewed for clear error, the District Court's conclusions of law are evaluated under a plenary standard, and the ultimate decision to grant the preliminary injunction is reviewed for abuse of discretion.[5] *Id.*

"The test for preliminary relief is a familiar one. A party

_____

[5]When First Amendment rights are at issue this standard is modified. Although we normally will not disturb the factual findings supporting the disposition of a preliminary injunction motion in the absence of clear error, we have a constitutional duty to conduct an independent examination of the record as a whole when a case presents a First Amendment claim. *Child Evangelism Fellowship*, 386 F.3d at 524. Here, however, the District Court's factual findings are not in dispute, although the parties do dispute their practical import.

seeking a preliminary injunction must show that (1) it has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction is denied, (3) granting preliminary relief will not result in even greater harm to the nonmoving party, and (4) the public interest favors such relief." *Id.* (quoting *KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004)). Generally, a panel entertaining a preliminary injunction appeal decides only whether the district court abused its discretion in ruling on the request for relief and does not go into the merits any further than necessary to determine whether the moving party established a likelihood of success. *Id.* Here, however, we are not required to take this narrow approach because the appeal from the denial of the preliminary injunction presents a question of law; the facts are either established or of no controlling relevance. *Id.* In such a case, we may decide the merits of the claim. *Id.*

## III. Discussion

### A. The District Court's Decision

In denying plaintiffs' request for a preliminary injunction, the District Court found that § 2911(b) did not impose a severe burden upon the plaintiffs' constitutional rights. Consequently, the court applied the familiar rational basis test to the statute to determine its constitutionality. As to the burden to minor political parties, the District Court noted that the 2% threshold of actual votes cast for a candidate was lower than the 5% threshold of eligible voters upheld after rational basis review by the Supreme Court in *Jenness v. Fortson*, 403 U.S. 431 (1971). Also, the District Court observed that minor political parties may obtain the needed signatures from the entire population of registered voters in Pennsylvania regardless of the voters' party affiliation and that, otherwise, the nomination papers process is not overly burdensome. *See generally Storer v. Brown*, 415 U.S. 724, 738-40 (remanding to the District Court to determine the burden on meeting the signature requirement while laying out a list of relevant factors for the District Court's consideration). Next, the District Court found that Pennsylvania's interests in decreasing ballot clutter and ensuring that only viable candidates are placed on the general election

7

ballot justified the 2% threshold found in § 2911(b) and the corresponding burdens on minor political parties' rights.

In addition, the District Court dismissed the plaintiffs' equal protection claim that the plaintiffs had based on the difference in treatment between minor political parties and "major," *i.e.*, Republican and Democrat, political parties. The District Court noted that, in *Jenness*, the Supreme Court held that there are legitimate reasons for states to treat minor and major party candidates differently. 403 U.S. at 441-42. Furthermore, the District Court opined that Pennsylvania law actually treats major party candidates more harshly than their minor party colleagues by requiring major party candidates to poll a plurality of their party's votes to be placed on the general election ballot, which in all likelihood is a higher absolute number than the 2% signature requirement for minor party candidates. For these reasons, the District Court denied the plaintiffs' motion for a preliminary injunction.

### B.     *Anderson* **and the Levels of Scrutiny**

At oral argument before us, the parties were questioned about the applicable level of scrutiny and whether *Anderson v. Celebrezze*, 460 U.S. 780 (1983), annuls, or otherwise changes, the familiar strict scrutiny, intermediate scrutiny, and rational basis classifications as applied to ballot access cases. First, we note that this Court, as well as others, has been unclear whether the *Anderson* balancing test applies to ballot access claims brought under the Equal Protection Clause, given that *Anderson* is a First Amendment case. *See Belitskus v. Pizzingrilli*, 343 F.3d 632, 643 n.8 (3d Cir. 2003). We clarify here that the *Anderson* test is the proper method for analyzing such equal protection claims due to their relationship to the associational rights found in the First Amendment. In *Belitskus*, we observed that we could not "see any basis for refusing to so apply (*Anderson*)." *Id; see also Reform Party of Allegheny Co. v. Allegheny Co. Dep't. of Elections*, 174 F.3d 305, 314 (3d Cir. 1999) (assuming that "burdens require the same level of scrutiny in an equal protection analysis that they do in an associational rights analysis."). Likewise, our sister Circuits have applied *Anderson* to similar claims under the Equal Protection Clause.

8

*See, e.g., Fulani v. Krivanek*, 973 F.2d 1539, 1542-44 (11th Cir. 1992); *Republican Party of Arkansas v. Faulkner Co.*, 49 F.3d 1289, 1293 n.2 (8th Cir. 1995) ("In election cases, equal protection challenges essentially constitute a branch of the associational rights tree.").  As such, we conclude that *Anderson* sets out the proper method for balancing both associational and equal protection concerns and the burdens that the challenged law creates on these protections as weighed against the proffered state interests.

What then is the import of *Anderson* on the traditional three tiers of scrutiny?  Although we appreciate that the strict scrutiny, intermediate scrutiny, and rational basis categories represent a convenient and familiar linguistic device by which courts, including our Court,[6] have characterized their review under *Anderson*, we note that *Anderson* promulgated a less categorical system of classification. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (noting that the full Court agreed in *Anderson* that "a more flexible standard applies.").  Put another way, ballot access cases should not be pegged into the three aforementioned categories.  Rather, following *Anderson*, our scrutiny is a weighing process:  We consider what burden is placed on the rights which plaintiffs seek to assert and then we balance that burden against the precise interests identified by the state and the extent to which these interests require that plaintiffs' rights be burdened. Only after weighing these factors can we decide whether the challenged statute is unconstitutional. *Anderson*, 460 U.S. at 789.  Consequently, we will look at the nature of the rights involved here and the burdens imposed by Pennsylvania election law on minor political parties in order to determine if the burden is justified.

## C.    Equal Protection

Ballot access is recognized as an important aspect of voting rights.  See *Bullock v. Carter*, 405 U.S. 134, 143 (1972)

---

[6]*See, e.g., Reform Party of Allegheny Co.*, 174 F.3d at 314 (applying an intermediate level of scrutiny).

("laws that affect candidates always have at least some theoretical, correlative effect on voters"). Nevertheless, using the pre-*Anderson* standard, "not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." *Id.* (citing *McDonald v. Board of Election*, 394 U.S. 802 (1969)). We interpret this standard to mean post-*Anderson* that the right to ballot access, although important in both First Amendment and Equal Protection contexts, may be limited in accord with appropriate state interests, and that limitations imposed in furtherance of such interests need not be the most narrowly drawn as long as they are nondiscriminatory and reasonable in light of the relevant burdens. *See Anderson*, 460 U.S. at 788 ("[T]he state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.").

The state interests here are avoiding ballot clutter and ensuring viable candidates. These interests have long been recognized as valid ones. *See Jenness*, 403 U.S. at 442. The burden is the 2% signature requirement. This burden is not unreasonable. In light of the more obtrusive law upheld in *Jenness*, "it is beyond dispute that Pennsylvania's 2% (signature) requirement (for ballot access) is facially valid." *The Patriot Party of Pa. v. Mitchell*, 826 F.Supp. 926, 939 (E.D. Pa. 1993); *Perry v. Grant*, 775 F.Supp. 821, 826 (M.D. Pa. 1991) ("Two percent is not an inherently unreasonable or unduly burdensome signature requirement."). Indeed, plaintiffs do not seriously contest the facial validity of the state's proffered legitimate interest – reducing ballot clutter and ensuring viable candidates. *See generally Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986) (noting that states do not have to prove actual ballot overcrowding). Furthermore, in *Storer* the Supreme Court noted that "gathering 325,000 signatures in 24 days would not appear to be an impossible burden." 415 U.S. at 740. Here, the burden on minor parties is significantly less, both in terms of the number of signatures and the time allowed to obtain them. Also, the fluctuations in the total do not present constitutional issues. *Perry*, 775 F.Supp. at 827-28 ("the fact that the total number of signatures required fluctuates with election results does not render it unconstitutional.").

10

Given that courts have held that signature requirements at a percentage rate even greater than the number involved here are reasonable, and in view of the acknowledged state's interest in imposing this burden, we conclude that § 2911(b) is not unconstitutionally burdensome on its face. Moreover, weighing the nature of the right involved and the burden imposed, the state is not limited in imposing this burden to the least restrictive methods of doing so.

This conclusion, however, is not the end of the analysis. *See The Patriot Party of Pa.*, 826 F.Supp. at 939 (noting that "the Supreme Court has on two separate occasions invalidated facially valid ballot access laws because of their application to a political party."). In this regard, plaintiffs contend that the 2% level of support that minor political parties must have previously demonstrated to be labeled a political party pursuant to § 2831(a) is a sufficient "modicum of support" to fulfill any of the state's legitimate interests. *See Jenness*, 403 U.S. at 442. In effect, plaintiffs are arguing that the combination of the 2% level of voter support requirement for minor party status in § 2831(a) plus the 2% signature requirement necessitated by § 2911(b) combine to form a constitutional violation. In making this argument, the plaintiffs rely heavily on a Maryland case, decided under Maryland law, that found that a similar "two-tier" arrangement violated the equal protection guarantees found in Article 24 of the Maryland Declaration of Rights. *See Maryland Green Party v. Maryland Bd. of Elections*, 832 A.2d 214 (Md. 2003).[7] Despite *Maryland Green Party*, however, plaintiffs' argument fails for a number of reasons.

_____

[7]We, of course, are in no way bound by this interpretation of the Maryland state constitution. Moreover, the factual differences in *Maryland Green Party* are significant. In particular, the Green Party had qualified as a political party on August 16, 2000, by gathering 10,000 signatures, and then had to produce a petition, signed by 1% of total registered voters, to get its candidate on the ballot in Maryland for the November 2000 election. We distinguish *Maryland Green Party* from the present case because of the factual requirements of the Maryland statutes, requiring the gathering of two sets of signatures within a two month period.

11

First, our examination of the Pennsylvania election statutes convinces us that minor political parties are not being subjected to a burden which is double that which must be met by political bodies and independent candidates. When a political body has attained the status of minor political party by reaching the 2% level of support in the previous election, the form of the nomination petition changes. A minor political party does not have to circulate a separate petition for each candidate, as does a political body. The nomination petition of a minor political party includes the names of all the party's candidates for office. Thus, it is apparent that the petition step becomes less burdensome when a political body has qualified as a minor political party.

Plaintiffs also point to the distinction in ballot access between the major political parties, which place their candidates on the ballot via a primary, and minor political parties, which have to use the nomination petition system. Plaintiffs, however, do not seriously challenge this distinction, and under *Jenness*, alternate ballot access rules for major and minor political parties are not *per se* unconstitutional. 403 U.S. at 441-42. ("[T]here are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. Georgia has not been guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot."). *But see Anderson*, 460 U.S. at 793 ("A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment.").

Moreover, the two-tiered nature of the minor political party process is consistent with, albeit different from, the two-tiered process for major political parties. And, as we have pointed out, the two tiers are not a double burden on minor political parties *vis-à-vis* political bodies because the realization of the 2% voter acceptance level results in an easing of the ballot petition process. Going back to the *Anderson* methodology, we conclude that the "two-tiered" nature of the law does not constitute an unacceptable burden.

12

Plaintiffs contend, however, that their showing of support to qualify as a political party is the sufficient "modicum of support" to be placed on the general election ballot. But in employing the "modicum" language in *Jenness,* the Supreme Court did not state that *any* showing of a modicum of support was sufficient to allay the state's legitimate concerns *vis-à-vis* ballot clutter. Rather, the Court stated that:

> There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot – the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election.

403 U.S. at 442. Here, the state's chosen "modicum of support" for political entities with less than 15% of the combined state-wide registration is the two percent signature threshold found in 2911(b).[8] The fact that a minor political party has earlier shown

---

[8]Judge Smith would note that the plaintiffs did not argue that the state's definition of minor and major political parties by their voter registration, rather than by their prior electoral support, could potentially be used to distinguish this case from *Jenness*. *Cf. id.* at 433 (noting that Georgia determined which political organizations were "political bodies" and not "political parties," and thus which nominating organizations were subject to the relevant signature requirement, on the basis of whether the organization's "candidate received 20% or more of the vote at the most recent gubernatorial or presidential election"). Rather, as the plaintiffs made clear during oral argument, they chose to rely instead on their argument that as applied to them, the signature requirement was unnecessary and therefore unreasonably burdensome.

Accordingly, we do not consider how the state's use of voter registration to define major and minor political parties might affect our scrutiny of the state's electoral laws, although we note that the Supreme Court in *Anderson* required that a state's ballot access restrictions be both reasonable and nondiscriminatory. *See* 460 U.S. at 788; *see also id.* at 793

13

a modicum of support by meeting a separate goal, which entails a separate distinction and a separate "benefit" to the party,[9] does not render the burden on plaintiffs an improper one. *See generally The Patriot Party of Pa.*, 826 F.Supp. at 935 (rejecting "the proposition that a political party should not have to re-establish a significant modicum of support in subsequent elections after it has met that burden once."). To hold otherwise risks infringing on an area traditionally allocated to the states. *See The Council of Alternative Political Parties*, 179 F.3d at 70 (noting that "states have broad power to enact election codes that comprehensively regulate the electoral process.").

Moreover, the fact that only New Mexico has a similar "two-tiered" system does not inflate the burden on the plaintiffs here, nor does it call into question the legitimacy of Pennsylvania's proffered interests. *See generally Perry*, 775 F.Supp. at 827 (arguing that "[i]t is not the courts' function to weigh the procedure chosen by the state legislature against the feasibility of less burdensome alternatives it could have chosen."). There are analogous obligations to demonstrate continuing voter support in the retention requirements found in other states. Our sister Circuits have upheld such retention requirements, which require a party to collect signatures to gain a place on the ballot and then invalidate a party's ballot-qualified status for the next election if the party's candidate does not receive a certain percentage of the vote, even though the party had shown an initial modicum of support. *See, e.g., McLaughlin v. North Carolina Bd. of Elections*, 65 F.3d 1215, 1221 (4th Cir. 1995), *cert. denied*, 116 S. Ct. 1320 (1996); *Rainbow Coalition v. Oklahoma State Election Bd.*, 844 F.2d 740, 741-42 (10th Cir. 1988).

---

("Our ballot access cases ... focus on the degree to which the challenged retsrictions to exclude certain classes of candidates from the electoral process.")(quoting *Clements v. Fashing*, 457 U.S. 957, 964 (1982)).

[9]The minor political party benefits by obtaining its status as a party because, as previously mentioned, it can create nomination papers for the entire party.

14

In addition, the lapse of time between reaching the 2% threshold in the previous election and having to obtain petition signers for the next election does not result in an unacceptably close measurement of the same indicia of support as was the case with the two-tier system in Maryland.[10] A minor political party could have polled well in the previous election, based on a relatively well-known candidate, thus meeting the requirements of § 2831(a), but then run a slate of candidates who could not garner the necessary "modicum" of support in the upcoming election. Permitting the "modicum" to be perpetual may result in ballot clutter.

As such, the District Court did not err in holding that the minimal burdens on minor political parties was justified by Pennsylvania's interest in preventing ballot clutter and ensuring viable candidates. After weighing the rights affected, the interests involved, and the extent to which these interests require the rights to be burdened, *see Anderson*, 460 U.S. at 789, we conclude that the plaintiffs have not demonstrated that the method chosen by the state to accomplish these interests violates the plaintiffs' rights to the equal protection of the laws.

### D.    Freedom of Association

Next, plaintiffs argue that under the reasoning of the Supreme Court in *California Democratic Party v. Jones*, 530 U.S. 567 (2000), § 2911(b) violates their right to freedom of association and is thus unconstitutional. The Court in *Jones* struck down a California law that converted the state's primaries from closed to open. In the proposed, open primary, voters could select any candidate regardless of the voter's or the candidate's affiliation. Plaintiffs argue that they face a similar interference here because the 2% signature threshold requires

---

[10]*See Maryland Green Party*, 832 A.2d at 219-20. Under the Maryland statutory scheme, the Green Party qualified as a political party on August 16, 2000, by submitting 10,000 signatures. The Green Party's candidate for the November 2000 election then had to produce a petition signed by at least 1% of the total number of registered voters in the contested congressional district.

15

minor political parties to obtain signatures from individuals who are not members of their respective parties. Republican and Democratic nominees, on the other hand, need not seek support from persons of other viewpoints to get on the Pennsylvania general election ballot.

*Jones*, however, is not applicable to a ballot access case, like the present one, in which internal party deliberations on the choice of party candidates are not implicated. Unlike the law at issue in *Jones*, Pennsylvania election law does not open the intra-party deliberations of minor political parties to persons who are unaffiliated with the party. "Forced" association caused by § 2911(b) occurs only as a minor party candidate solicits signatures from registered voters, who may be registered with any party or as an independent. However, in *Jenness*[11] and its progeny, the Supreme court recognized that the test for a modicum of support can be taken from registered voters in general in order to allow access to the general election ballot. But in regard to the issue presented in *Jones*, the intra-party procedures to select the party's candidates, there is no interference under the Pennsylvania system. In Pennsylvania, a minor political party is free to select anyone it chooses as its candidate, unaffected by the requirements of § 2911(b). As such, *Jones* is inapplicable.

In addition, the Supreme Court's fusion law jurisprudence supports the distinction between intra-party deliberations and ballot access, with the former enjoying a higher degree of constitutional protection. For example, in *Timmons v. Twin City Area New Party*, 520 U.S. 351 (1997), the Supreme Court upheld a Minnesota law that prevented a candidate from being nominated by more than one party, *i.e.* an anti-fusion law. In distinguishing the case from *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), overturning Connecticut's primary election statute which was in opposition to the rules of the Republican party, the Supreme Court noted that *Tashjian* "involved (the) regulation of political

---

[11]Plaintiffs have questioned the wisdom of the Supreme Court's decision in *Jenness*. We note in passing that it is not the role of this Court to overturn Supreme Court precedent.

parties' internal affairs and core associational activities, Minnesota's fusion ban does not." *Timmons*, 520 U.S. at 359-60. Here, Pennsylvania's 2% requirement regulates neither the minor political parties' internal affairs nor its core associational activities. Thus, we agree with the District Court's ultimate conclusion that associational rights are not violated by § 2911(b).

## IV. Conclusion

For the reasons discussed above, we will affirm the District Court's denial of the plaintiffs' motion for a preliminary injunction. In addition, we will "affirm" the suggestion of the District Court that the Pennsylvania General Assembly "consider enactments that will simultaneously meet the identified state interests but also allow for a less ponderous means of ballot access for minor political parties in Pennsylvania."