## The CONSTITUTION PARTY OF PENNSYLVANIA; The Green Party of Pennsylvania; The Libertarian Party of Pennsylvania; Joe Murphy; James N. Clymer; Carl J. Romanelli; Thomas R. Stevens; Ken Krawchuk

v.

## *Pedro A. CORTES; Jonathan M. Marks, Appellants.

---

**52.** App. 56a.

*(Pursuant to Rule 43(c),
Fed. R. App. P.)

No. 15-3046

United States Court of Appeals,
Third Circuit.

Argued April 13, 2016

(Filed: June 2, 2016)

James N. Clymer, Clymer Musser Brown & Conrad, 408 West Chestnut Street, Lancaster, PA 17603, Oliver B. Hall (Argued), Center for Competitive Democracy, 1835 16th Street N.W., Washington, DC 20009, Counsel for Appellees

Kevin R. Bradford, Claudia M. Tesoro (Argued), Office of Attorney General of Pennsylvania, 21 South 12th Street, Philadelphia, PA 19107, Sean A. Kirkpatrick, Office of Attorney General of Pennsylva-

nia, Strawberry Square, 16th Floor, Harrisburg, PA 17120, Gregory R. Neuhauser, Office of Attorney General of Pennsylvania, Strawberry Square, 15th Floor, Harrisburg, PA 17120, Sarah C. Yerger, Post & Schell, 17 North 2nd Street, 12th Floor, Harrisburg, PA 17101, Counsel for Appellants

Before: AMBRO, SMITH, and KRAUSE, Circuit Judges

## OPINION

SMITH, Circuit Judge.

While the outcome of this case may yield major consequences, we are, as the Commonwealth concedes, confronted with two "relatively narrow" and "more technical issues" on appeal. Appellants' Br. 3. This lawsuit challenges the constitutionality of two provisions of Pennsylvania's election code: 25 Pa. Stat. Ann. §§ 2911(b) and 2937. These provisions, respectively, (1) regulate the number of signatures required to attain a position on the general election ballot and (2) govern the process by which private individuals can sue in the Pennsylvania Commonwealth Court to challenge the validity of a candidate's nomination paper or petition. At the summary judgment stage, the District Court held that, acting in combination, the two statutory provisions as applied to the Appellees violated their First and Fourteenth Amendment rights. Yet on appeal the Commonwealth challenges only two technical issues on which it believes it can prevail, even "assuming some constitutional

injury." Appellants' Br. 3. First, the Commonwealth argues that neither state official sued here has a sufficient connection to the challenged code provisions to be a proper defendant. Second, it argues that the District Court's order was "incoherent on its face," *id.* at 36, and thus provided no practical benefit to the Appellees. For the reasons discussed below, we reject both arguments and will affirm the District Court's order.

## I.

The Appellees in this case are the Constitution Party of Pennsylvania, the Green Party of Pennsylvania, and the Libertarian Party of Pennsylvania; their respective chairmen—Joe Murphy, Carl Romanelli, and Thomas Robert Stevens; James Clymer, a member of the Constitution Party; and Ken Krawchuk, a former Libertarian Party candidate for the U.S. Senate. For ease of reference and consistency with our earlier opinion in this case, we will refer to the Appellees collectively as the "Aspiring Parties." [1] They filed suit against the Secretary of the Commonwealth of Pennsylvania, Pedro Cortes, and the Commissioner of the Pennsylvania Bureau of Commissions, Elections, and Legislation, Jonathan M. Marks (collectively, the "Commonwealth" or the "officials") in their official capacities.

### A.[2]

In order to fully understand this appeal, it is necessary to provide some background

---

1. As we previously noted,
   Despite referring to themselves as the "Minor Parties," the organizational Appell[ees] are in fact not minor parties but are "political bodies" for purposes of the election code.... The term "party" also has an equivocal character, indicating both a political party and a litigant in a lawsuit. Thus, we have created our own term. We use it

only to capture the idea that both the individual Appell[ees] and the organizational Appell[ees] aspire to full political participation.
*Constitution Party of Pa. v. Aichele,* 757 F.3d 347, 350 n. 2 (3d Cir. 2014).

2. We borrow much of Part I.A from our earlier opinion in this case as the facts underlying

regarding Pennsylvania's election code. To begin, the code distinguishes between "political parties" and "political bodies." 25 Pa. Stat. Ann. § 2831. An organization qualifies as a "political party" if, during the most recent general election, one of its candidates polled at least two percent "of the largest entire vote cast" in each of at least ten counties and "polled a total vote in the State equal to at least two per centum of the largest entire vote cast in the State for any elected candidate." *Id.* § 2831(a). Political parties may then be categorized as either major or minor parties. *Id.* § 2872.2(a); *Rogers v. Corbett*, 468 F.3d 188, 190–91 (3d Cir. 2006). Minor parties are defined as parties receiving less than fifteen percent of the total statewide registration for all political parties, 25 Pa. Stat. Ann. § 2872.2(a), while parties with more support, at present only the Democratic and Republican Parties, are deemed major parties, *Rogers*, 468 F.3d at 191. "Political bodies" are organizations that did not have a candidate who crossed the two-percent threshold in the last election, and so they do not qualify for the benefits of being either a minor or a major party. 25 Pa. Stat. Ann. § 2831.

Major parties have the benefit of a publicly funded primary process through which the field of candidates is winnowed down and a party representative is chosen for the general election. *See id.* § 2862; *Rogers*, 468 F.3d at 191. To be placed on the primary ballot, a major party candidate needs only to gather, at most, 2,000 signatures. 25 Pa. Stat. Ann. § 2872.1. Minor parties and political bodies (together,

"non-major parties"), however, have to put on a much larger signature-gathering campaign to have their nominees appear on the general election ballot. For statewide office in 2016, for example, a non-major party candidate would need to gather 21,-775 signatures.[3] Appellees' March 1, 2016 Rule 28(j) letter at 2. After collecting these signatures, non-major party candidates are also required to file a nomination paper with the Secretary of the Commonwealth. *See id.* §§ 2872.2 ("Nominations by minor political parties"), 2911 ("Nominations by political bodies"); *Rogers*, 468 F.3d at 191. The nomination paper is then examined by the Secretary of the Commonwealth, who must reject the filing of any submission containing "material errors or defects apparent on [its] face ... or on the face of the appended or accompanying affidavits; or ... contain[ing] material alterations made after signing without the consent of the signers; or ... not contain[ing] a sufficient number of signatures." 25 Pa. Stat. Ann. § 2936.

Even after being received and filed by the Secretary, however, the nomination paper can be subjected to further examination if an individual lodges an objection within seven days of its acceptance and seeks to set aside the nomination paper.[4] *Id.* § 2937. If any objections are filed pursuant to § 2937, the Commonwealth Court reviews and holds a hearing on the objections and determines whether the candidate's name will be placed on the ballot. *Id.* If an objection is successful and a nomination petition or paper is dismissed,

---

this appeal are identical to those previously discussed. *See id.* at 350–55.

3. This number is calculated according to 25 Pa. Stat. Ann. § 2911(b), which requires a nomination paper for a statewide office to include valid signatures equal to two percent of the vote total of the candidate with the

largest number of votes for any statewide office in the previous election.

4. While not always used consistently, under the election code only major party candidates file "petitions" while candidates of non-major parties file "papers." *Aichele*, 757 F.3d at 351 n. 5.

"the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just." *Id.*

The Pennsylvania Supreme Court has held that, under § 2937, "an award of costs ... is not warranted solely on the basis that the party prevailed"; there must be some further reason, and it is an abuse of discretion for a lower court to award such costs "without identifying any reason specific to [the] case or ... why justice would demand shifting costs to them." *In re Farnese*, 609 Pa. 543, 17 A.3d 357, 369–70 (2011). At the same time, however, the court held that, while "fraud, bad faith, or gross misconduct ... may require an award of costs," "a party's conduct need not proceed to such an extreme before" costs can be shifted. *Id.* at 372. Thus, under § 2937, costs may be awarded to the person opposing nomination papers if there is some showing that it would be "just" to do so, despite the absence of "fraud, bad faith, or gross misconduct" on the part of the candidate whose nomination paper was challenged. *Id.*

In 2004, independent presidential candidate Ralph Nader and his running mate were ordered to pay $81,102.19 in costs under § 2937, following a court determination that their Pennsylvania "signature-gathering campaign involved fraud and deception of massive proportions." *In re Nader*, 588 Pa. 450, 905 A.2d 450, 455, 460 (2006). That ruling appears to mark the first time costs were ever imposed pursuant to § 2937, and the reverberations from that decision have been significant.

According to the Aspiring Parties, the *Nader* decision transformed how § 2937 was understood and applied across the Commonwealth. They claim that the threat of extraordinary costs "caused several minor party candidates either to withhold or withdraw their nomination petitions" during the 2006 election cycle. Appellees' Br. at 8. For example, Appellant Krawchuk previously stated that, although the Libertarian Party nominated him as its candidate for United States Senate in 2006, he declined to run "due to the fact that ... Ralph Nader and his running mate ... had recently been ordered to pay $81,102.19." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 353 (3d Cir. 2014). Thus, according to the Aspiring Parties, in 2006 "only one minor party candidate [ran] for statewide office": Appellant Romanelli, the Green Party's nominee for United States Senate. *Id.*

As required by § 2911, Romanelli had to obtain 67,070 valid signatures to get on the ballot in 2006. He submitted 93,829 signatures but was removed from the ballot after private parties affiliated with the Democratic Party filed a successful objection pursuant to § 2937. Romanelli was then ordered to pay costs totaling $80,407.56. *In re Nomination Paper of Rogers*, 942 A.2d 915, 930 (Pa. Commw. Ct. 2008). The Commonwealth Court found that costs were warranted due to the failure of both Romanelli's campaign and the Green Party to comply with certain court orders, including an order to provide nine people to assist in the review of the nominating signatures and an order to timely provide the court with the "specifics of what stipulated invalid signatures [Romanelli] believed could be rehabilitated." *Id.* at 929.[5]

### B.

Over the course of the next several election cycles, the effect of the *Nader* decision

---

5. Because the challenge to Romanelli's candidacy in 2006 was successful, under 25 Pa. Stat. Ann. § 2831(a), none of the Aspiring Parties qualified as minor parties leading up to the 2008 election. They were thus reclassified as political bodies.

continued to deter Aspiring Party candidates from entering the political fray. *Aichele*, 757 F.3d at 355. Indeed, as discussed at length in *Aichele*, the challenge process was allegedly being used by "allies" of the major parties to scare off minor party candidates with "threats of financial ruin." *Id.* at 354. This was not an empty threat; the cost of reviewing thousands upon thousands of signatures made many potential non-major party candidates unwilling to run. In 2010 not a single candidate, other than the Democratic and Republican nominees, appeared on a statewide ballot.

Recognizing this shift in the political calculus following *Nader*, the Aspiring Parties filed suit under 42 U.S.C. § 1983 on May 17, 2012, against the Commonwealth. They claimed that, as a result of the increasing imposition of costs on non-major party candidates, §§ 2911(b)[6] and 2937[7] (together, the "provisions") worked in combination to violate their First and Fourteenth Amendment rights. Specifically, they alleged that the provisions required them to assume the risk of incurring "substantial financial burdens ... if they defend nomination petitions they are required by law to submit." Compl. 17. In response, the Commonwealth filed a motion to dismiss this case under Rule 12(b) of the Federal Rules of Civil Procedure, which the District Court granted for lack of standing under Rule 12(b)(1). The Aspiring Parties timely appealed that determination, and we reversed, holding that the Aspiring Parties had standing. *Aichele*, 757 F.3d at 368.

The case was thus remanded to the District Court, which entertained cross-motions for summary judgment on the Aspiring Parties' request for a declaratory judgment that the provisions violated their constitutional rights.[8] In their motion for summary judgment, the Aspiring Parties argued that, even if the signature requirement alone was facially constitutional,[9] the two provisions worked *in combination* to unconstitutionally burden their constitutional rights. The Aspiring Parties explained that even though there were no direct costs associated with securing a spot on the ballot, the joint effect of §§ 2911(b) and 2937 essentially created an implicit ballot-access fee that was part of a "patently exclusionary" system in which non-major parties or their candidates would, almost without fail, be forced to spend upwards of $50,000 to defend a nomination paper. *The Constitution Party of Pennsylvania v. Cortes*, 116 F.Supp.3d 486, 502–03 (E.D. Pa. 2015) (estimating a $50,000 cost for candidates defending a § 2937 challenge arising from the Commonwealth Court ordering such candidates

---

**6.** The statute provides in relevant part: "Where the nomination is for any office to be filled by the electors of the State at large, the number of qualified electors of the State signing such nomination paper shall be at least equal to two per centum of the largest entire vote cast for any elected candidate in the State at large at the last preceding election at which State-wide candidates were voted for...." 25 Pa. Stat. Ann. § 2911(b).

**7.** The statute provides in relevant part: "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside." 25 Pa. Stat. Ann. § 2937.

**8.** The Aspiring Parties also argued that § 2937 was facially unconstitutional, but the District Court disagreed and held in favor of the Commonwealth on this claim. This issue was not appealed by the Aspiring Parties and is therefore not before us.

**9.** Indeed, this Court has previously upheld the facial validity of the signature requirement in *Rogers v. Corbett*, 468 F.3d 188 (3d Cir. 2006).

to provide temporary employees to jointly review signatures with the challenger before the court would itself review the signatures that remained in dispute). This figure also did not include the potential added liability if costs were assessed by the Commonwealth Court. This added liability could bring the total cost to over $130,000 per candidate per election. *Id.* at 502.

The District Court considered these claims and held in a well-reasoned opinion that "the near certainty of incurring costs pursuant to § 2937 brings the facts of this case in line with" prior precedent holding that "patently exclusionary" fees were unconstitutional absent alternative means of ballot access. *Id.* at 501–03. The District Court then noted that "[t]he typical alternative to onerous ballot access costs" was a higher signature requirement—something already in place *in addition to* the onerous costs associated with a non-major party bid for a statewide office. *Id.* at 503. It then concluded that "the combined effect of the signature requirement with Section 2937's signature validation procedures" substantially burdened the Aspiring Parties' associational rights, and held both provisions unconstitutional as applied. *Id.*

In addition, the District Court explained that the Commonwealth's attempt to rely on *Rogers*—our earlier opinion holding that § 2911(b)'s signature requirement is facially constitutional—was misplaced. Even though the signature requirement was facially valid, the District Court noted, this did not prevent it from finding the requirement unconstitutional as applied in combination with § 2937. *Id.* at 505. As the District Court made clear, it is not *solely* the signature requirement nor *solely* the challenge provision that creates the unconstitutional burden on the Aspiring Parties; it is the interaction of both provisions that causes problems. Thus, as the District Court explained in a footnote, its holding should not be read to facially invalidate § 2911(b). *Id.* at 508 n. 38. The District Court granted the Aspiring Parties' motion for summary judgment on their as-applied challenge to §§ 2911(b) and 2937, but granted summary judgment in favor of the Commonwealth on the Aspiring Parties' facial challenge to § 2937. *Id.* at 511. The Commonwealth timely appealed this order regarding the as-applied unconstitutionality of both provisions, but the Aspiring Parties chose not to appeal the determination that § 2937 is facially valid.[10]

## II.

█ Because we are reviewing a grant of summary judgment, our standard of review is plenary. *Belitskus v. Pizzingrilli,* 343 F.3d 632, 639 (3d Cir. 2003). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Belitskus,* 343 F.3d at 639.

█ The Commonwealth begins by asserting that, "even assuming some constitutional injury," the District Court's order in this case should be reversed. Appellants' Br. at 3. The Commonwealth then makes only two arguments in its briefing, neither of which addresses the substance of the District Court's ruling on the as-applied challenge. First, the Commonwealth claims that neither official has a sufficient connection to the challenged provisions to be a proper defendant here. Second, it argues that the District Court's declaratory judg-

---

10. The Aspiring Parties filed suit pursuant to 42 U.S.C. § 1983. The District Court therefore exercised subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. We have jurisdiction to review a district court's final decision pursuant to 28 U.S.C. § 1291.

ment order holding the provisions unconstitutional *as applied* but upholding them *on their face* is nonsensical and thus provides no practical benefit to the Aspiring Parties. As the Commonwealth attempts to wryly put it, "[i]n other words, § 2911(b) is constitutional, except that it isn't." *Id.* at 37. Because the Commonwealth chose not to raise any other issues on appeal, we must limit our analysis to these two issues, deeming waived any argument that the provisions, as applied in combination to the Aspiring Parties, do not actually violate their constitutional rights.[11]

### A.

■■ While the Commonwealth begins by arguing that neither official sued here has any connection to the challenged provisions, we believe the appropriate place to begin is with its second argument: that the District Court's declaratory judgment provided no practical benefit to the Aspiring Parties.

This is the case, the Commonwealth argues, because, "with all due respect to the district court, [its opinion is] incoherent on its face." *Id.* at 36. As further evidence of what appears to be some serious confusion on the part of the Commonwealth, it then asks, "[s]o exactly what did the district court 'declare' and, more important, what

are [the officials] supposed to do in the wake of the declaratory judgment against them?" *Id.* at 37. The Commonwealth *does* correctly note that the challenged provisions "remain part of the Election Code," but then concludes that, as a result, the officials cannot "protect the [Aspiring] Parties from the operation of 25 Pa. Stat. Ann. § 2937" because "[t]hey have no ability to prevent private parties from invoking that statutory provision to challenge the nomination papers." *Id.* at 37-38.

■■ This argument shows that the Commonwealth fails to appreciate the difference between a facial and an as-applied challenge. "The distinction between facial and as-applied challenges ... goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). That is, "[a]n 'as applied' challenge is a claim that the operation of a statute is unconstitutional in a particular case while a facial challenge indicates that the statute may rarely or never be constitutionally applied." 16 C.J.S. Constitutional Law § 243; *see also United States v. Huet*, 665 F.3d 588, 600–01 (3d Cir. 2012) (same); *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (same). Here, the District Court held that

---

11. In its opening brief, the Commonwealth notes that "[t]he legal rub here is that, even assuming some constitutional injury, or potential injury, has been inflicted on the litigants ... that injury was not and could not be inflicted by the two officials they sued...." Appellants' Br. at 3. The Commonwealth then makes the two arguments discussed above but never addresses the District Court's opinion on the merits. The Aspiring Parties take note of this and state that "the Commonwealth concedes that the challenged statutory scheme is unconstitutional as applied to the Minor Parties." Appellees' Br. at 28. In its reply, the Commonwealth argues that "[t]here was no concession." Appellants' Reply Br. at 3. Instead, the Commonwealth tries to argue

that somehow they were able to dodge the merits of this case by *assuming* an injury and only raising these narrower issues on appeal. This displays a fundamental misunderstanding of the federal appellate process: by not challenging the merits of the District Court's order, if the Commonwealth loses on the two arguments it raised in this appeal, the order will remain in effect and the Commonwealth will not be able to enforce both provisions against the Aspiring Parties. Indeed, at oral argument the Commonwealth conceded that this was a conscious decision, but when asked why it chose such a litigation strategy, its answer was more opaque than illuminating. *See* Oral Argument at 00:10:20, *Cortes v. Constitution Party of Pa.*, (No. 15-3046).

in many situations the challenged election laws are constitutional; it is only when they are applied to certain non-major parties that the two provisions work in tandem to deprive these groups of their constitutionally protected rights under the First and Fourteenth Amendments.[12] Accordingly, even though the provisions remain "on the books," they cannot both be enforced against the Aspiring Parties as a result of the District Court's ruling.[13]

To accept this reasoning would mean that there is no mechanism in place that would allow private parties to bring a challenge under § 2937 against the Aspiring Parties. The Commonwealth is therefore wrong that the signature requirement can be enforced against the Aspiring Parties in the form of a private suit brought *pursuant to* an unconstitutional provision of Pennsylvania's election code. Indeed, the Commonwealth in its reply brief seems to acknowledge as much, noting that "[i]f [the Aspiring Parties] were not required to file nomination papers [under § 2911(b)], there would not be anything for anyone to challenge . . . ."[14] Appellants' Reply Br. at 7. As the Commonwealth further points out, "it is certainly true that but for the signature requirement there would be no private-party challenges to those signatures; and but for those challenges there would be no costs associated with defending the challenges." *Id.* at 15. This demonstrates just how the relief granted here provides a practical benefit to the Aspiring Parties: the Commonwealth may not enforce both § 2911(b) and § 2937 together against the Aspiring Parties.

Seen in this light, it is readily apparent that the District Court's order was not incoherent on its face and indeed provides the Aspiring Parties with a very practical benefit. As we held in *Aichele*, "[i]f the Commonwealth officials do not enforce the election provisions at issue, then the Aspiring Parties will not be burdened by the nomination scheme embodied in §§ 2911(b) and 2937." 757 F.3d at 368.[15]

## B.

The Commonwealth also argues that the District Court erred because the two state officials sued in this case had no connection to the enforcement of the provisions causing harm to the Aspiring Parties, and

12. In other words, the District Court found that, even though § 2937 applies to major and minor parties, "there is no evidence that Section 2937 is having any impact on the speech of major parties or their candidates." *The Constitution Party of Pa. v. Cortes*, 116 F.Supp.3d 486, 509 (E.D. Pa. 2015). Thus, because the statute is not unconstitutional in the large majority of its applications, it is not facially invalid. *See United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

13. We express no view as to whether the Commonwealth could constitutionally enforce only one of the two provisions against the Aspiring Parties. We are not confronted with that issue here and need not reach it.

14. The Commonwealth does try to argue, unpersuasively, that any challenge to the signature requirement is foreclosed by our earlier decision in *Rogers v. Corbett*, 468 F.3d at 188, which upheld the facial validity of the Commonwealth's signature requirement. *Rogers*, however, was distinguished at every point in this litigation because the challenge here is not just to the signature requirement. Rather, as has been said repeatedly, the challenge here is to the signature requirement *as applied in combination with* the challenge requirements allowing private actors to object to nomination papers. This is what caused the alleged injury here. *Cf. Storer v. Brown*, 415 U.S. 724, 737, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) ("[A] number of facially valid provisions of election laws may operate in tandem to produce impermissible barriers to constitutional rights.").

15. While this language was in reference to redressability for purposes of standing, its reasoning is certainly persuasive.

thus were improper defendants under 42 U.S.C. § 1983. Specifically, the Commonwealth asserts that the Secretary of the Commonwealth and its Commissioner of the Pennsylvania Bureau of Commissions, Elections, and Legislation are simply "some hapless state official[s] who [are] at best ... bystander[s]." Appellants' Br. at 33.

■ As we have held on multiple occasions, while suits against a non-consenting State are barred by the Eleventh Amendment, a party can sue a state official under *Ex Parte Young* for acting in violation of a federal law or the Constitution:

> The theory behind *Young* is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct.

*MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001). Such a suit, however, cannot simply seek to make the state officials "representative[s] of the state." *Ex parte Young*, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Instead, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act." *Id.* That said, we have held that even "entirely ministerial" duties can be sufficient under *Young*, because "the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights." *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980).

■ More specifically, this case was brought under 42 U.S.C. § 1983, which allows an individual to bring suit against a state official who is acting "under color of state law"—a requirement that parallels the "state action" requirement elucidated in *Ex parte Young* actions brought pursuant to the Fourteenth Amendment. *See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 & n. 8, 119 S.Ct. 977, 143 L.Ed.2d 130 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Despite the Commonwealth's arguments to the contrary, the Supreme Court's holding in *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), makes clear that a § 1983 claim challenging the combined effect of ballot access provisions is properly brought against a state's election official, such as the Secretary of the Commonwealth. *Id.* at 779, 94 S.Ct. 1296 (reviewing minor political parties' § 1983 claim for declaratory and injunctive relief brought against the Texas Secretary of State challenging "various aspects of the Texas ballot qualification system *as they interact with each other*") (emphasis added).

Our case law likewise supports the notion that the Appellants in this case play a sufficient role in administering § 2911(b) and other ballot-access provisions to be named as the defendants in Appellees' § 1983 suit. *See Rogers*, 468 F.3d at 190 (considering the facial constitutionality of § 2911(b) in a § 1983 suit brought against *Secretary Cortes* himself); *Belitskus*, 343 F.3d at 638 (reviewing the merits of a § 1983 suit against the Secretary of the Commonwealth and the Election Commissioner challenging filing fees associated with accessing the Pennsylvania ballot, noting that the Secretary of the Commonwealth "is responsible for overseeing various aspects of the Common-

wealth's election process, including receipt of candidates' nomination petitions and filing fees" and that the Election Commissioner "has administrative responsibility for various aspects of the election process, including ballot access"). While Appellees' suit challenges the combined effect of § 2911(b) *and* § 2937, it appears clear that, based on our own jurisprudence, § 2911(b) is sufficient to bring the named defendants into this suit.

Despite the clear history of allowing § 1983 suits to proceed against election officials in cases similar to this one, the Commonwealth attempts to pin blame for the harm to the Aspiring Parties on everyone except the officials who were sued. First, the Commonwealth claims that it is the Commonwealth Court that adjudicates the disputes, *"without* the involvement of executive branch officials." Appellants' Br. at 31. The Commonwealth then argues that it is not actually the Commonwealth Court, but the individual challengers suing under § 2937 who cause injury to the Aspiring Parties. Thus, according to the Commonwealth, because "neither [the] · Commonwealth Court nor private parties are *obliged* to follow the district court's decision," "Secretary Cortes and Commissioner Marks [cannot] protect the [Aspiring] Parties from the operation of 25 Pa. Stat. Ann. § 2937." This is because they have "no ability" to prevent private suit under the statute or to prevent how the Commonwealth Court will rule on the challenge. *Id.* at 37-38.

This argument falls apart once one properly understands the District Court's opinion. The Commonwealth seems to believe that, because both provisions are facially

constitutional, the Aspiring Parties still have to gather signatures and submit them for review by the Commonwealth.[16] This argument, again, misunderstands the fundamental difference between facial and as-applied challenges. As discussed above, the District Court's order prevents the Commonwealth from enforcing the two provisions together against the Aspiring Parties. Thus, the Aspiring Parties cannot be forced to both collect the number of signatures required under § 2911(b) *and* defend those signatures in the § 2937 challenge process. Once viewed in this way, the argument that the two officials sued here have no connection to these ·election code provisions is, to say the least, off the mark.

Indeed, the very actions of the two officials in this case show how incongruous the Commonwealth's position is. As brought to our attention by the Aspiring Parties in a Rule 28(j) letter, the Commonwealth's Department of State sent a letter to the Aspiring Parties explaining that, under § 2911(b), all political body candidates for statewide office must collect 21,775 signatures in 2016. The letter then explained that because "[n]o court has issued any decision altering the duty of candidates to comply with 25 P.S. § 2911(b)," both Secretary Cortes and Commissioner Marks "are obligated to follow 25 P.S. § 2911(b) as usual and intend to do so in 2016." The clear import of this letter is that the two named officials plan to enforce §§ 2911(b) and 2937 against the Aspiring Parties in 2016. While this would be in clear violation of the District Court's order for the reasons discussed above, the letter on its face also refutes the claim that neither official has any connection to the enforcement of

---

**16.** In addition, at oral argument, the Commonwealth admitted that, administratively, the officials sued here were responsible for "preparing the ballots" and thus listing who

is eligible as a candidate in that election. Oral Argument at 00:7:05, *Cortes v. Constitution Party of Pa.,* (No. 15-3046).

the challenged provisions.[17]

Even putting aside the admissions of the Commonwealth, Pennsylvania's election code is replete with provisions discussing the role Secretary Cortes plays in administering it. Section 2911(b), for example, vests in the Secretary the statutory duty to "receive and determine, as herein provided, the sufficiency" of nomination papers. 25 Pa. Stat. Ann. § 2621(d); *id.* § 2911(b). Indeed, according to the code, "[w]hen any nomination petition, nomination certificate or nomination paper is presented in the office of the Secretary of the Commonwealth or of any county board of elections for filing . . . , it shall be the duty of the said officer or board to examine the same." *Id.* § 2936. Further, as we noted in *Aichele*, "[t]o appear on the general election ballot, minor parties and political bodies are required to file nomination papers with the *Secretary of the Commonwealth*." 757 F.3d at 351 (emphasis added). In addition, it is up to the Secretary of the Commonwealth to determine "which organizations are political parties within the State." 25 Pa. Stat. Ann. § 2861. Moreover, under § 2865, the Secretary of the Commonwealth is in charge of "designating all the offices for which candidates are to be nominated therein." These statutory requirements clearly illustrate the necessary connection between the challenged statutory scheme and the officials.[18] Finally, § 2937 itself also refers to the Secretary of the Commonwealth, requiring him to open his office on the last day available for candidates to withdraw their nomination petitions or for objections to nomination petitions to be filed; while this reference does not bestow upon the Secretary an active role in the challenge process, it certainly creates at least a minor administrative role in the challenge process and indicates that, by virtue of his other duties, the Secretary is bound up in the § 2937 challenge process.

Furthermore, we have already addressed the Commonwealth's related claim that proper defendants in this case are the individual citizens challenging nomination papers under § 2937. In *Aichele*, we held regarding standing that "[t]he Commonwealth cannot hide behind the behavior of third parties when its officials are responsible for administering the election code that empowers those third parties to have the pernicious influence alleged in the Complaint." 757 F.3d at 367. Indeed, we went on to note that "[i]f the Commonwealth officials do not enforce the election provisions at issue, then the Aspiring Parties will not be burdened by the nomination scheme embodied in §§ 2911(b) and 2937, allowing the [Aspiring] Parties' candidates to run for office and build functioning political parties." *Id.* at 368.

Finally, we note that the Commonwealth's attempt to separate the two challenged provisions, and thus disclaim responsibility for administering § 2937, also fails. Permitting such a fragmentation of the Aspiring Parties' claims would prevent meaningful review of the real harm caused by the statutory scheme in place here. *See*

---

17. When pressed at oral argument, the Commonwealth also admitted that the two officials here have a role to play in enforcing § 2911(b). Oral Argument at 00:01:20, *Cortes v. Constitution Party of Pa.,* (No. 15-3046).

18. If this were not enough, the Commonwealth's website also explains that Commissioner Marks "will oversee the administration of the Elections, Notaries Public, Commissions and Legislation programs. He is also responsible for planning, developing and coordinating statewide implementation of the Election Code." Pennsylvania Department of State, http://www.dos.pa.gov/about-us/Pages/Commissioner,-Bureau-of-Commissions,-Elections,-and-Legislation.aspx#.VugKoOIrKig (last visited April 18, 2016).

*Storer v. Brown*, 415 U.S. 724, 737, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) ("[A] number of facially valid provisions of election laws may operate in tandem to produce impermissible barriers to constitutional rights."); *Williams v. Rhodes*, 393 U.S. 23, 34, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (looking at the "totality" of Ohio's election laws when determining whether they are unconstitutional). We therefore hold that both officials sued by the Aspiring Parties had a sufficient connection to the enforcement of the challenged provisions as required under *Ex Parte Young*.

## C.

Our holding, of course, does not prevent the legislature from amending its election code to create new, constitutional, provisions that regulate access to the general election ballot. Nor do we express any view as to whether the Commonwealth could choose to enforce only one or the other provision against the Aspiring Parties. We simply hold that what the Commonwealth *cannot* do is avoid the clear import of the District Court's order in this case: that §§ 2911(b) and 2937, when enforced together, are unconstitutional as applied to the Aspiring Parties.

## III.

For the reasons stated above, we will affirm the District Court's order granting summary judgment on Counts I and II in favor of the Aspiring Parties.